210 February 22, 2013 No. 7

IN THE SUPREME COURT OF THE
STATE OF OREGON

Mark STRAWN,
on his own behalf and as representative of
a class of similarly situated persons,
*Petitioner on Review/Respondent on Review*,

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
an Oregon stock insurance company;
Mid-Century Insurance Company,
a foreign corporation;
and Truck Insurance Exchange,
a foreign corporation,
*Respondents on Review/Petitioners on Review*,

*and*

FARMERS INSURANCE GROUP INC.,
a foreign corporation,
*Defendant.*

(CC 9908-09080; CA A131605;
SC S057520 (Control), S057629)

On petitions for attorneys fees filed June 23, 2011, August 11, 2011, and February 13, 2012; resubmitted January 7, 2013.

Richard S. Yugler, Landye Bennett Blumstein LLP, Portland, filed the petitions for attorney fees and costs for Petitioner on Review/Respondent on Review.

P. K. Runkles-Pearson and James N. Westwood, Stoel Rives LLP, Portland, filed the responses/objections to the petitions for attorney fees for Respondents on Review/ Petitioners on Review.

Before Balmer, Chief Justice, and Kistler, Linder, Landau, Brewer, and Baldwin, Justices.*

———————
* Walters, J., did not participate in the consideration or decision of these petitions.

LINDER, J.

The petitions for attorney fees for proceedings following the decision of the Court of Appeals are allowed in part and denied in part as follows. Strawn is awarded $72,724.75 in attorney fees and expenses not part of attorney fees ($70,299.90 and $2,424.85 respectively), that amount to be paid by Farmers under ORS 742.061(1). Strawn also is awarded another $297,850.74 in attorney fees and expenses not part of attorney fees ($291,012.10 and $6,838.64 respectively on all three fee petitions), that amount to be paid from the punitive damages award in this case. Strawn is awarded a $5,000 class incentive fee to be paid from the punitive damages award in this case. The request for class administration fees is denied without prejudice to Strawn seeking an award of those fees by appropriate application to the trial court. Farmers's motion to stay issuance of the appellate judgment is dismissed as moot.

**LINDER, J.**

Mark Strawn, the plaintiff in this class action case, has petitioned for an award of attorney fees and costs incurred for the appellate work done on review before this court in *Strawn v. Farmers Ins. Co.*, 350 Or 336, 258 P3d 1199, *adh'd to on recons*, 350 Or 521, 256 P3d 100 (2011), *cert den*, ___ US ___, 132 S Ct 1142, 181 L Ed 2d 1017 (2012). In addition, Strawn seeks two supplemental fee awards: one for the cost of litigating the fee petition, and the other for the cost of defending against a petition for *certiorari* in the United States Supreme Court after this court issued its decision. Finally, Strawn asks this court to award him a $5,000 incentive fee for his service on review as class representative. As we discuss in more detail later, the attorney fee awards that Strawn seeks are of two kinds. One is a so-called "fee-shifting award" pursuant to ORS 742.061(1) (set out later in this opinion), which would be paid by defendants Farmers Insurance Company of Oregon *et al*. (collectively, Farmers).[1] The other is a so-called "common-fund" award, which would be paid from the punitive damages recovery in the class action. Farmers raises various challenges to the fees requested in the main fee petition, in both supplemental fee petitions, and in the motion for an incentive fee.

Preliminarily, we observe that this court often resolves attorney fee petitions by order, rather than written opinion. The court does so because most fee petitions present few or no legal issues, and instead entail fact-bound or case-specific questions of entitlement to and reasonableness of the fees requested. This case, likewise, presents certain disputes that are fact-bound and case-specific. We resolve those issues with limited discussion, consistent with our practice of ordinarily resolving them by order.

In this instance, however, the petitions and objections also present legal issues that are appropriate to resolve by opinion. Those issues include: (1) the appropriate method for determining the amount of a reasonable fee award in a case that involves both a statutory fee-shifting

---

[1] There are three defendants in this case: Farmers Insurance Company of Oregon, Mid-Century Insurance Company, and Truck Insurance Exchange.

award and a common-fund award; (2) the propriety of applying a multiplier to the awards; (3) how fees should be apportioned between the fee-shifting and the common-fund awards; (4) whether this court has authority to award attorney fees for work done in opposing a petition for writ of *certiorari* to the United States Supreme Court; (5) whether a court has authority to award post-opinion, prejudgment interest on court-awarded attorney fees; and (6) whether an appellate court may award a class representative a class incentive fee on appeal and review.

## I.  BACKGROUND

We begin with a brief outline of this litigation, to provide background for our discussion of the requested fees. Strawn filed a class action against Farmers raising two contractual claims (breach of contract and breach of the covenant of good faith) and one common law claim (fraud) in connection with auto insurance policies written by Farmers.[2] The contractual claims were premised on the common legal and factual theory that Farmers did not pay personal injury protection (PIP) benefits in the full amount owed under the auto insurance policies; the fraud claim was premised on the related theory that Farmers deceived the plaintiff class members by preventing them from being aware that Farmers was not paying their PIP benefits in the full amount owed. *Strawn*, 350 Or at 343, 352-53. The jury found for the class on the contractual claims and the fraud claim, and it made a single award of compensatory damages on those claims. In addition, and for the fraud claim only, the jury awarded punitive damages. Consistently with the jury's verdict, the trial court entered a judgment awarding the class approximately $900,000 in compensatory damages (which included prejudgment interest) and $8 million in punitive damages. *Id.* at 344. The trial court also awarded Strawn attorney fees totaling over $3.1 million. Of that amount, over $2.6 million was a fee-shifting award to be paid by Farmers; about $500,000 was a common-fund award to be paid from the punitive damages awarded to the class.

---

[2] Strawn also sought and prevailed on a declaratory judgment claim, but that claim is not a basis for the attorney fees that Strawn seeks.

Farmers appealed. The Court of Appeals rejected Farmers's challenges to liability but agreed with Farmers that the $8 million awarded in punitive damages was excessive under federal due process standards. *See Strawn v. Farmers Ins. Co.*, 228 Or App 454, 485, 209 P3d 357 (2009), *aff'd in part and rev'd in part*, 350 Or 336, 258 P3d 1199 (2011). The Court of Appeals determined that punitive damages of four times plaintiffs' actual harm was the most that was constitutionally permissible; consequently, the court remanded the case for a new trial on punitive damages, unless plaintiffs agreed to remittitur of punitive damages to approximately $3.6 million (the maximum punitive damages that the court found constitutionally permissible, plus interest). *Id.* The Court of Appeals also rejected Farmers's challenge to the amount of the fee-shifting award that the trial court ordered it to pay. *See id.* at 457 (summarizing court's conclusions). The court later issued a second opinion awarding Strawn attorney fees for work done on appeal totaling $585,441 (according to our calculations). The bulk of that amount ($544,305) was awarded as a fee-shifting award payable by Farmers; the remainder ($41,136) was a common-fund award payable from the punitive damages recovery. *See Strawn v. Farmers Ins. Co.*, 233 Or App 401, 410, 418, 422, 426, 226 P3d 86 (2010) (figures not including cost awards).

Both Strawn and Farmers sought review by this court. Strawn asserted that the Court of Appeals had erred in reducing the punitive damages award. Farmers argued that the Court of Appeals had not reduced the punitive damages enough to comport with constitutional standards; Farmers also raised challenges that went to its liability on the contractual and fraud claims. *Strawn*, 350 Or at 339. In their respective petitions for review, neither party raised any issue about the attorney fee awards made by the trial court or the Court of Appeals.[3]

---

[3] Farmers filed a separate petition for review asking this court to vacate the fees awarded by the Court of Appeals in the event that Farmers prevailed in this court on its challenges to the trial court's award on the merits. That petition, however, did not otherwise raise any substantive challenge to the previous awards.

This court allowed both petitions for review. Ultimately, this court rejected Farmers's challenges to liability. *Id.* at 344-62. On the punitive damages award, this court agreed with Strawn that Farmers had failed to raise its challenge on appeal in a way that permitted to Court of Appeals to reach the issue. Consequently, this court did not reach the parties' due process arguments about the amount of punitive damages that could constitutionally be awarded; instead, we affirmed the $8 million punitive damage award because of the procedural posture of Farmers's challenge. *Id*. at 369-70. On Farmers's petition for reconsideration, this court issued a written opinion adhering to its prior opinion. *Strawn v. Farmers Ins. Co.*, 350 Or 521, 256 P3d 100 (2011).

## II.   ATTORNEY FEES

As we previewed at the outset, Strawn seeks two types of attorney fee awards. The first is a statutory fee award pursuant to ORS 742.061(1).[4] That statute directs trial and appellate courts to award attorney fees against the defendant in an action to recover on an insurance policy, if the plaintiff's recovery exceeds the amount of any tender in the case. Such an award typically is referred to as a "fee-shifting" award, because the prevailing party's attorney fees are shifted to the losing party. In this case, as Strawn agrees, ORS 742.061(1) authorizes a fee-shifting award against Farmers for the work done only on the contractual claims (breach of contract and breach of implied covenant of

---

[4] The citation is to the 1997 version of ORS 742.061, which provided, in part:

"(1)  Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

In 1999, the legislature amended ORS 742.061 to add an exception that potentially bars recovery of attorney fees in a case such as this. Or Laws 1999, ch 790, § 1 (exception when insurer fails to pay PIP benefits if insurer accepted coverage, only issue is amount of benefits, and insurer consented to submit case to binding arbitration). Although Farmers argued that the amendment applied retroactively to this case, the Court of Appeals rejected that argument, and that issue was not presented to this court on review. *See Strawn*, 228 Or App at 486-87 (analyzing amendment). Accordingly, we apply the 1997 version of the statute to this case. All citations in this opinion are to that version.

good faith and fair dealing). That statute does not authorize attorney fees on the common law fraud claim or the punitive damages award.

Consequently, for work in furtherance of the fraud claim and associated punitive damages, Strawn seeks attorney fees from the punitive damages award itself, pursuant to the so-called "common-fund" doctrine. That doctrine generally applies when a party has litigated to create or preserve a monetary fund on behalf of others, as occurs in a successful class action for damages. Rather than shift the plaintiff's litigation expenses to the losing party, the common-fund doctrine permits the burden of those expenses to be shared among those who benefitted from the litigant's efforts by allowing plaintiff's lawyers to be paid from the common fund created or preserved by the litigation. The doctrine is an equitable one, premised on the theory that those benefitted by the common fund would be unjustly enriched if they did not share in the cost of creating or preserving that fund that would otherwise be borne by the party that pursued the litigation. *See Strunk v. PERB*, 341 Or 175, 181-84, 139 P3d 956 (2006) (discussing common-fund doctrine). In the context of class-action litigation specifically, the common-fund doctrine permits attorney fee awards from a monetary judgment that benefits the class. *See generally* Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 14:2, 512 (4th ed 2002) ("When the class action successfully recovers a fund for the benefit of a class, it is long settled that the attorneys who created that class recovery are entitled to be reimbursed from the common fund for their reasonable litigation expenses, including reasonable attorney's fees."). The Oregon procedural rule governing class actions, ORCP 32, appears to codify the common-fund doctrine by authorizing a reasonable fee award to be paid from any recovery awarded to the class when the judgment can be divided for that purpose. *Compare* ORCP 32 M(1)(c) ("If the prevailing class recovers a judgment that can be divided for the purpose, the court may order reasonable attorney fees and litigation expenses of the class to be paid from the recovery.") *with State Farm Mut. Auto. Ins. v. Clinton*, 267 Or 653, 657, 518 P2d 645 (1974) (describing common-fund doctrine in similar terms).

A.  *Methodology for Determining Attorneys Fees*

   1.  *Prevailing Methodologies for Fee Awards*

     For an attorney fee awarded either pursuant to a fee-shifting statute or the common-fund doctrine, the touchstone for the amount of the award is the same—reasonableness. *See* ORS 742.061(1) (court to fix fee in "reasonable amount" in action on insurance policy); ORCP 32 M(1)(c) (court may order "reasonable attorney fees" in class action); *Strunk*, 341 Or at 184 (common-fund doctrine permits award of "reasonable fees" assessed to the fund). In determining what amount of fee is reasonable, two basic methods of calculation are generally available. One is the so-called "lodestar" method, by which the attorney is awarded a fee based on a reasonable hourly rate, multiplied by a reasonable number of hours devoted to work on the case, with certain adjustments potentially made to that amount for factors such as the risk of loss and the quality of the attorney's work. *See* Conte & Newberg, 4 *Newberg on Class Actions* § 14:5 at 541-42. The other is the so-called "percentage method" (percent-of-fund) method, which sets the fees by calculating the total recovery secured by the attorneys and awarding them a reasonable percentage of that recovery. *Id.* § 13:80 at 493. In general, the lodestar methodology is thought to more directly account for the amount of work done, while the percent-of-fund method more directly reflects the result achieved. *See generally id.* § 14:5 at 541; Alba Conte, 1 *Attorney Fee Awards* § 1:8, 23-24 (3d ed 2004).

     Traditionally, in both state and federal courts, the percent-of-fund method has been the prevalent means of calculating the reasonable fee award in common fund cases. Conte & Newberg, 4 *Newberg on Class Actions* § 13:80 at 493. During the 1970s, however, the lodestar approach gained favor in common fund cases, largely as a result of the federal Third Circuit Court of Appeals decision in *Lindy Bros. Bldrs. v. American R. & S. San. Corp.*, 487 F2d 161 (3d Cir 1973) (reversing trial court attorney fee award based on the percent-of-fund methodology). The favor was relatively short-lived. In the mid-1980s, the Third Circuit convened a task force to review the "widespread belief that

the deficiencies of the [lodestar approach] either offset or exceed[ed] its benefits." Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 FRD 237, 246 (1986). The task force concluded, among other problems, that calculating a lodestar and adjusting it for factors such as quality of representation and risk undertaken created an unwarranted "sense of mathematical precision," was insufficiently objective, was burdensome and unmanageable for courts, and encouraged lawyers to devote excessive or unnecessary hours to the litigation. *Id*. at 246-49.[5]

Because of "myriad problems posed" by calculating attorney fees under a *Lindy*-type lodestar approach, the task force made various recommendations for change. *Id*. at 273-74. Foremost among them was the importance of distinguishing between traditional common fund cases and cases involving statutory fees, which reflect differing policies. *Id*. at 250. In a common fund case, the goal is to equitably share the burden of litigation among those benefitted by the fund. Statutory fee cases, on the other hand, shift the burden of litigation to the losing party to serve other goals. In many statutory fee provisions, the goal is to "encourage private enforcement of the statutory substantive rights," both economic and noneconomic. *Id*. Many statutory fee cases thus involve "important issues of social policy or civil rights," and may result in either very low monetary recoveries or, as in the case of declaratory or injunctive relief, no monetary recovery at all. *Id*. at 253. The task force therefore concluded that the basic lodestar methodology, as refined by recommendations that the task force made, should be retained in most statutory fee cases. *Id*. at 259. But it advocated abandoning the lodestar method in traditional common fund cases, as well as in statutory

---

[5] As the task force further observed:

"Perhaps the sharpest attack on the *Lindy* regime is the claim that its preoccupation with attorneys' time and market rates encourages the expenditure of excessive or unnecessary hours \*\*\*. Quite understandably, district judges find it difficult, indeed, in most instances, impossible, to police these matters by looking over the shoulders of lawyers to monitor the way they handle their cases. To impose that obligation on the Bench is unrealistic, unduly time-consuming, and typically will amount to little more than an exercise in hindsight."

*Id*. at 262 (footnote omitted).

fee cases that are likely to result in a settlement fund from which adequate counsel fees can be paid. *Id*. at 255-56. For those cases, the task force concluded, a percent-of-fund method was the preferable approach. *Id.*

In the years since the Third Circuit's report, the lodestar method of fee calculation, despite the criticisms it has faced, has become the prevailing approach in statutory fee-shifting cases, largely because a formula based on a percentage of the recovery is not usually available. *See* Conte, 1 *Attorney Fee Awards* § 2:7 at 85 (describing trend in the law during and after 1980s). In common fund cases, however, federal and state courts alike have increasingly returned to the percent-of-fund approach, either endorsing it as the only approach to use, or agreeing that a court should have flexibility to choose between it and a lodestar approach, depending on which method will result in the fairest determination in the circumstances of a particular case. Conte & Newberg, 4 *Newberg on Class Actions* §13:80 at 496 (describing many federal jurisdictions as having either abandoned lodestar approach or given trial courts flexibility to use percent-of-fund analysis in its place; state courts "overwhelmingly" use percent-of-fund method rather than lodestar approach).

Finally, because neither method has proven to be without flaws, courts do not always confine themselves to one or the other.[6] Rather, there is a trend towards using a blended approach, in which a court may calculate the fee based on the percent-of-fund method and then, by comparing that fee to what the lodestar approach would produce, check the reasonableness of the result. Conte,

---

[6] As Conte observes in his treatise on attorney fee awards, neither method is inherently better than the other or particularly satisfying in terms of predictability or consistency:

"What has now emerged in most fee-award decisions is a recognition that fee determinations in both common-fund and statutory-fee situations are incapable of mathematical precision because of the intangible factors that must be resolved in the court's discretion based on the circumstances of each particular case. There is also the recognition that rigid adherence to any fee-formula approach which attempts to assign precise weights or multipliers to particular factors is an exercise that gives an impression of artificial precision to what essentially must be a sound judgment call by the court after considering the relevant factors as applied to the particular case involved."

1 *Attorney Fee Awards* § 2:7 at 85 (footnote omitted).

1 *Attorney Fee Awards* § 2:6 at 69, 78 (describing tandem use of lodestar and percent-of-fund approaches as cross-check on reasonable fee; growing recognition of shortfalls of lodestar approach); Conte & Newberg, 4 *Newberg on Class Actions* § 13:80 at 496-97 (state and federal courts often use hybrid approach to cross-check reasonableness of fee award). That approach has been most often used in so-called "hybrid" class actions that are initiated under a statute with a fee-shifting provision, but that later, through settlement or judgment, result in a common fund recovery for the class. Conte & Newberg, 4 *Newberg on Class Actions* § 14:10 at 605. The blended approach is usually used to ensure the reasonableness of a percent-of-fund award. Conte & Newberg, 4 *Newberg on Class Actions* § 14:7 at 172 (Supp 2012). Courts also have used it, however, to test the reasonableness of a fee calculated through the lodestar method by checking the lodestar fee against what the percent-of-fund method would yield when there is a common fund available for that purpose. *Id*. Conte, 1 *Attorney Fee Awards* § 2:6 at 69-70 (in practice courts often compare results of both methods).

2.  *Methodology in This Case*

This court has never attempted to assess the appropriate methodology to be applied to common fund and statutory fee-shifting cases generally. Nor have the parties done so in this case. Rather, as they did at trial and on appeal to the Court of Appeals, the parties have assumed that the lodestar methodology is the appropriate one to use for both the statutory fee-shifting and the common-fund awards; likewise, the trial court and the Court of Appeals, without discussing the correct methodology, used the lodestar approach for both the common fund and fee-shifting awards. Strawn, however, invites something of a blended approach through his arguments to this court. In particular, in assessing the reasonableness of the lodestar fee and the adjustments to it that he proposes, Strawn compares the overall fee that he requests to the amount that his attorneys would have received under his contingent fee agreement with them, which was based on a percentage of the damages awarded.

The lodestar approach that the parties have used is at least a permissible one under the statutes involved.[7] Because the parties have structured their principal arguments around that approach, we begin there as well. We also conclude, however, that a percent-of-fund methodology is a helpful cross-check on the lodestar calculation, for two reasons. First, this case is a "hybrid" one—that is, it is a class action that resulted in a significant common-fund award, even though it was brought at least partially pursuant to a statute authorizing a fee-shifting award.[8] A percent-of-fund methodology fits with the nature of the relief that plaintiff and the class recovered in this case. *See Strunk*, 343 Or at 246 (in cases that result in a common fund recovery, the "fund itself is a primary measure of success").

---

[7] Neither a lodestar or a percent-of-fund approach is mandated by the statutes involved, although both are potentially permissible. ORS 20.075 sets out criteria to assess the reasonableness of all court-awarded attorney fees. That statute does not specify any particular methodology for the award, but it does instruct the court to consider the amount of time required by the case, given the difficulty of the questions involved and the skill necessary. ORS 20.075(2)(a). The emphasis is expressly on the time *required* by the issues involved, not the time actually spent; the lodestar method initially measures the latter. Actual time spent, however, is at least relevant to assessing the time required. At the same time, the statute also looks to the "amount involved in the controversy and the results obtained," ORS 20.075(2)(d), which the percent-of-fund approach more directly measures in a common fund case or other case involving a significant monetary award. We therefore conclude that the statute, although not mandating either a lodestar or percent-of-fund methodology, does not foreclose either.

The same is true of the provision governing fee awards in class actions. Among other factors, the applicable rule explicitly considers "[t]he time and effort expended by the attorney," as well as the "[r]esults achieved and benefits conferred upon the class," ORCP 32 (M)(1)(e)(i) and (ii). The rule suggests that either or both a lodestar and percent-of-fund method of fee calculation can be appropriate, depending on which methodology best arrives at a fair award given the circumstances of the particular case.

[8] Worth noting in that regard is that ORS 742.061(1) applies to actions brought on insurance policies of any kind. The statute thus provides for an award of attorney fees in essentially private contractual disputes whether they involve a modest loss to an automobile owner, a massive loss to a corporation, or a dispute between insurers. Unlike many statutorily authorized fee-shifting awards, the award authorized by ORS 742.061(1) is not designed to ensure the availability of counsel to pursue socially desirable policies in cases that counsel might otherwise not be willing to pursue. The statute instead serves the different purpose of encouraging settlement of insurance claims without litigation. *Compare Chalmers v. Oregon Auto. Ins. Co.*, 263 Or 449, 452, 502 P2d 1378 (1972) (identifying that as the purpose for the statutory predecessor to ORS 742.061(1)) *with Honeywell v. Sterling Furniture Co.*, 310 Or 206, 213, 797 P2d 1019 (1990) (fees available in unlawful trade practices cases assure that wronged consumers can obtain counsel to prosecute claims that would otherwise be impractical to bring).

Second, plaintiffs prevailed on two independent, if related, types of claims: contract-based and fraud. Both are fee-generating claims, but each looks to a different source for the fee. As we have already described, for the contract claims, Strawn's attorneys are entitled to a fee-shifting award to be paid by Farmers. For the fraud claim and the punitive damages component of the case, the attorney fee award comes from the common fund itself. In a case involving both a fee-shifting award and a common-fund award, counsel appropriately should be paid reasonable fees from both authorized sources to further the purpose of each award; conversely, "allowing recovery under only one partially thwarts the object of the other." *Honeywell v. Sterling Furniture Co.*, 310 Or 206, 213, 797 P2d 1019 (1990). Because this case generated a significant monetary recovery on both types of claims, some of which ($900,000 in compensatory damages) is attributable equally to both, but much of which ($8 million in punitive damages) is attributable only to one (the fraud claim), a percent-of-fund method is particularly appropriate to test the reasonableness of the attorney fee awards to be made. Quite simply, it would overlook the realities of this litigation—in which the incentive to pursue the litigation was the potential monetary recovery—to not account for the amount of the fund recovered in determining, or at least cross-checking, the total amount of attorney fees that Strawn's attorneys will receive.[9]

B.  *Main Fee Petition*

As we earlier described, Strawn has filed a series of petitions and supplemental petitions seeking attorney fees to be paid in part by Farmers and in part from the punitive damages awarded to the class. We consider each of those petitions, and the issues that they raise, in turn, beginning with Strawn's main fee petition.

---

[9] As Conte observes:

"A common-fund fee award that does not consider the amount of the fund produced as the controlling guideline in setting a reasonable fee under prevailing market conditions runs afoul of the economics and practicalities of a plaintiff-litigation practice."

1 *Attorney Fee Awards* § 2:7 at 105.

1.   *A Reasonable Base Lodestar Fee*

Strawn's main petition for attorney fees requests fees for work done in seeking review by this court, in resisting Farmers's petition for review, and in briefing the merits on both petitions. In that petition, Strawn presents billings listing the number of hours worked on those stages of the case, multiplies those hours by the billing rates for the attorneys and other staff who worked them, and calculates a base lodestar accordingly. Strawn then argues for adjustment of that lodestar through a multiplier, principally to compensate his attorneys for the contingent nature of any fee they would receive, which in turn entailed the risk of nonpayment and delay in receiving any fee from either the common fund or Farmers.

Farmers challenges some of the discrete billings by Strawn's attorneys, arguing that they are for work that the attorneys either should not have performed or for which they should not have billed. With one exception, we reject those challenges without further discussion. The exception is a $575 charge for 2.5 hours that an attorney spent driving to and from Salem to deliver replacement pages for Strawn's response brief, which Strawn now concedes are not allowable. We agree with Strawn's concession and, accordingly, we have deducted the amount of that billing from all figures in this opinion.

Farmers's more significant challenge is to the reasonableness of the overall time spent by Strawn's attorneys on the briefing and other work involved in litigating the case at this court's level. In total, for work done after the Court of Appeals decision and until this court issued its opinion, Strawn's attorneys spent a total of 1,252.55 hours. For those hours of work, Strawn seeks a base fee award of $412,807.00. In addition, Strawn asks this court to apply multipliers to the base amounts, resulting in a total requested fee of $760,063.12 for work done on review to this court.[10]

_____

[10] Strawn applies different multipliers for the fee-shifting and common-fund awards that he seeks (1.6 times amounts attributed to the fee-shifting award, and 2.0 times amounts attributed to the common-fund award). We later discuss how the hours are apportioned between the two fee categories. We omit that information here, however, because including it would unnecessarily complicate the process of determining whether the total number of hours incurred was reasonable.

In response, Farmers does not challenge the hourly rates claimed by Strawn's counsel, but it does challenge the reasonableness of the number of hours. *See* ORS 20.075(2)(a) (requiring court to consider the amount of time required by the case, given the difficulty of the questions involved and the skill necessary). In support of that challenge, Farmers offers the testimony of an expert that 614.3 hours would have been reasonable for the work done before this court, for a total fee award of $202,719. Farmers also opposes the use of any multipliers to the base fee award.

We have evaluated the factors prescribed by ORS 20.075,[11] and we agree with Farmers that those factors do not support the amount of fees that Strawn requests. In particular, we have considered the novelty, difficulty, and skill needed to perform the legal services required of the case on review by this court. In that regard, we have taken into account the fact that the issues had been previously and extensively briefed at the Court of Appeals level, that Strawn's attorneys were already intimately familiar with the record, and that many of the issues turned on fairly narrow procedural points that were neither novel or unusually

---

[11] ORS 20.075(2) directs the court to consider the following factors in determining the amount of fees to be awarded:

"(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

"(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

"(c) The fee customarily charged in the locality for similar legal services.

"(d) The amount involved in the controversy and the results obtained.

"(e) The time limitations imposed by the client or the circumstances of the case.

"(f) The nature and length of the attorney's professional relationship with the client.

"(g) The experience, reputation and ability of the attorney performing the services.

"(h) Whether the fee of the attorney is fixed or contingent."

Subsection (2) of ORS 20.075 requires the court to consider, in addition, "the factors specified in subsection (1)." Subsection (1) lists factors that ordinarily are considered in deciding whether to make a discretionary award of fees. We do not list those factors here, because we conclude that they do not inform the proper disposition of this particular fee petition.

difficult (such as preservation).[12] The case was complex, but not unusually so for a civil case involving such a large damages award, and not as complex as many cases that come before this court. In our view, the approach that both parties took to the case complicated it more than necessary and the court was less aided by the parties' advocacy as a result. *See generally Chalmers v. Oregon Auto. Ins. Co.*, 263 Or 449, 455-56, 502 P2d 1378 (1972) (in determining reasonable attorney fee, court considers assistance provided by party seeking fee, including efficiency of briefing and helpfulness of advocacy). Strawn, as the party seeking an award of fees, has the burden of establishing the reasonableness of the fee amount that he requests. *Hillsboro v. Maint. & Const. Serv.*, 269 Or 169, 172, 523 P2d 1036 (1974) (where opposing party objects to attorney fee request, burden of proving reasonableness of fees rests on party seeking them). We have considered Strawn's arguments in favor of the number of hours his attorneys expended (1,252.22) as against the estimate by Farmers's expert of a reasonable number of hours for the work done at this court's level (614.3 hours). We are persuaded by Farmers's expert.[13] Multiplied by the average rate of $330 per hour charged by Strawn's attorneys,[14] we conclude that a reasonable lodestar fee for the work done on review to this court is $202,719.

---

[12] As the Court of Appeals aptly observed in its opinion awarding attorney fees in this case for the work done on appeal:

"Appellate work is not identical to trial work. As the prevailing party at trial and the respondent on appeal, plaintiffs were entitled to certain favorable standards of review. The prosecution of the case at trial was more risky than the defense of the judgments on appeal. In addition, plaintiffs' efforts in arguing from a closed record on appeal cannot be equated with their efforts in creating that record at trial."

*Strawn*, 233 Or App at 417.

[13] We have reviewed the attorney fee orders that this court has awarded from the year 2000 forward. Strawn's requested amount of fees appears unprecedented. Equally unprecedented would be an award at the reduced amount that Farmers's expert identified as reasonable. Although that fact is not determinative, it does have legitimate bearing, especially given that this case is not the high water mark of complex cases coming to this court.

[14] Farmers's expert relied on that average rate to calculate a reasonable fee based on the total hours that he concluded would have been reasonable to devote to the work involved. Although Strawn, in response, took issue with the expert's opinion on the reasonableness of the hours devoted to the case, Strawn did not take issue with the average hourly rate that the expert used.

2.    *Whether to Adjust the Lodestar for Contingency*

ORS 20.075(2)(h) directs a court, in setting a reasonable attorney fee, to consider whether the attorney fee is fixed or contingent. Strawn relies on ORS 20.075(2)(h) as supporting an enhanced award in this case through the use of a multiplier. He contends, essentially, that a mere hourly award would compensate his attorneys significantly below the amount that they would receive if they were paid on a contingent fee basis, thus failing to account for the risk that his attorneys incurred agreeing to undertake the case.[15]

In support, Strawn compares the amount of attorney fees already awarded by the trial court and Court of Appeals to the amount that his counsel would have been entitled to receive under the terms of the contingent fee agreement that Strawn and his attorneys negotiated. The contingent fee agreement with Strawn (as class representative) entitles his attorneys to a percentage of the "gross recovery to all class members"—50 percent if the case goes to appeal.[16] Strawn asserts that the gross recovery for the class is $12,114,305, which consists of the general judgment of $8,900,000, plus fee-shifting attorney fee awards against Farmers of $2,670,000 by the trial court and $544,305 by the Court of Appeals. Strawn asserts that the attorney fees awarded to date are only 31 percent of that gross recovery—well below the 50 percent provided in the contingency fee agreement.

---

[15]  As Conte explains:

"It is axiomatic that attorneys who work on a contingent-fee basis must charge a higher fee than those who work on a noncontingent-fee basis, to compensate them for the risk of loss and the risk of receiving no compensation for services rendered and to permit them to earn an income that would be competitive with colleague who get paid, win or lose."

1 *Attorney Fee Awards* § 1:8 at 23-24 (footnote omitted). Neither party in this case has explored the legislative history of ORS 20.075(2)(h) to determine whether, as Strawn assumes, the legislature intended that provision to authorize a multiplier to account for contingency. For present purposes, we may assume, without deciding, that it does, because (as we later explain) we conclude that the fees awarded are reasonable without any multiplier. In this case, therefore, it suffices to note that courts that have used the lodestar methodology to determine a reasonable fee have divided over the question of how any enhancement to the lodestar for contingent fee cases should be calculated, a division illustrated by the three opinions in *Pennsylvania v. Del. Valley Citizens' Council*, 483 US 711, 107 S Ct 3078, 97 L Ed 2d 585 (1987).

[16]  More specifically, the fee agreement entitles counsel to the *greater* of 50 percent of the class recovery or the fees actually awarded by the court.

As we earlier noted, that comparison by Strawn invites a percent-of-fund method of calculating the attorney fee as a check on the lodestar calculation. And as we have already explained, such an approach seems particularly appropriate in this case, because this litigation resulted in a significant common fund for which a percent-of-fund approach is generally considered to be an appropriate way to calculate a reasonable attorney fee. Strawn's calculation, however, reflects three significant errors.

First, Strawn incorrectly includes the fee-shifting attorney fee awards as part of the gross recovery subject to the contingent fee. Doing so amounts to a form of double-counting. The client would be charged a percentage of not only the fund recovered under the judgment, but also an added percentage based on the attorney fees that the attorney will recover from the other side. Because of that double-counting problem, fee-shifting attorney fee awards may not be considered as part of the gross recovery subject to a contingent fee, at least in the absence of a specific fee agreement to the contrary. *See Chalmers*, 263 Or at 453-54 (noting possibility of holding that fee-shifting award could "be added to the amount of the judgment in determining the total amount of recovery subject to the contingent fee percentage," but rejecting such a rule absent a specifically negotiated fee agreement that so provides).[17] The fee agreement in this case, which is part of the record, does not

---

[17] *Chalmers* noted the "basic unfairness" to a client who expects the attorney to be fully paid by the contingent fee, only to learn that the attorney will claim both the contingent fee and a fee awarded by the court. 263 Or at 454. The court recognized that an attorney and client might (subject to the attorney's ethical obligations) negotiate a fee agreement to calculate the fee in that or some other way, because an agreement would not create any surprise or unfairness. *Id.* In the absence of a specific provision, however, any fee-shifting award must be credited against the amounts due under the contingency fee agreement:

"If *** the contingent fee agreement makes no specific reference to any possible attorney fee which may be awarded by the court and makes no specific provision for the manner in which any such fee is to be considered in computing the amount, source, and manner of distribution of the contingent fee, we hold that any attorney fee awarded by the court shall be offset as a credit or deduction from the amount of the agreed contingent fee, as computed upon the basis of the amount of the judgment."

*Id.* If the fee-shifting award is large enough, then the client would be entitled to the full amount of the judgment, despite the contingent fee agreement. *Id.* at 454-55.

provide for the contingent fee to be calculated by adding any fee-shifting award to the damages. We conclude, then, that the fee-shifting attorney fee awards made in this case should not be included in the total recovery for purposes of calculating the contingent fee. Instead, the contingent fee applies only to the total damages (compensatory plus interest, and punitive damages) awarded to the class based on the jury's verdict: $8,900,000. So calculated, the amount of attorney fees that Strawn's attorneys have received to date (that is, at trial and before the Court of Appeals) is not 31 percent, as Strawn claims. It is, instead, 42 percent.

The second error is that Strawn's calculations fail to reflect the statutory limit on the contingent fee that could be collected in this case. The class was awarded $900,000 in compensatory damages and $8 million in punitive damages, for a total of $8.9 million. Strawn assumes that the contingent fee would be half of that, or $4.45 million. But the legislature, by statute, has limited the contingent fee that may be paid from a punitive damages award. Specifically, under *former* ORS 18.540(1)(a) (1999),[18] no more than 20 percent of a punitive damages award may be awarded to a plaintiff's counsel as attorney fees. In this case, the maximum contingent fee amount payable to Strawn's counsel from the punitive damages award would be $1.6 million. That amount, added to half the compensatory damages ($450,000), equals $2,050,000.

That figure—slightly over $2 million—represents the largest contingent fee that, consistently with *former* ORS 18.540(1)(b) (1999), Strawn's attorneys could have received from the class recovery for litigating this case, notwithstanding the negotiated fee agreement. Necessarily,

---

[18] *Former* ORS 18.540(1)(a) (1999) provided, in part:

"Forty percent [of the award of punitive damages] shall be paid to the prevailing party. The attorney for the prevailing party shall be paid out of the amount allocated under this paragraph, in the amount agreed upon between the attorney and the prevailing party. However, in no event may more than 20 percent of the amount awarded as punitive damages be paid to the attorney for the prevailing party."

*Former* ORS 18.540 (1999) has since been renumbered as ORS 31.735 and was amended in 2011. Or Laws 2011, ch 689, § 1; Or Laws 2011, ch 597, § 311. Those amendments are not relevant to the disposition of this case.

then, it is also the "reasonable market expectation" that Strawn's attorneys would have had for taking the risk of litigating this case for a contingent fee. The trial court and Court of Appeals, however, have already awarded Strawn's attorneys over $3 million in attorney fees. Thus, relative to the amount they would have received under the contingent fee agreement, Strawn's attorneys are not being undercompensated by the base lodestar fee.

The third error in Strawn's calculation is his use of a 50-percent contingent fee that he and his attorneys negotiated as the appropriate comparison for a percent-of-fund analysis. As Strawn concedes, a court is not bound by that agreement in determining a reasonable fee to be paid from the class recovery under the common-fund doctrine.[19] Strawn nevertheless presumes that a 50-percent fee would be appropriate in this case. We disagree.

For individual litigation, the normal range for a reasonable contingent fee is between 33 and 40 percent of any recovery, with 50 percent usually serving as the upward limit. Conte, 1 *Attorney Fee Awards* § 2:8 at 123 (describing usual range) and § 2:8 at 106 (stating general upward limit). Class actions, however, generally benefit from significant economies of scale and generate proportionately larger common funds than do individually litigated cases. *Id.* § 1:9 at 27 and 2:7 at 104.[20] Because of that reality, courts frequently reduce the percentage of the fund awarded below what would be awarded in individual litigation. *Id*. § 2:7 at 104. Thus, for complex class actions that result in substantial economic recoveries, the normal fees tend to be between 20 to 30 percent of the recovered fund, with deviations from

---

[19] Specifically, Strawn acknowledges:

"[G]iven a court's unique authority in class-action proceedings and the necessity of ensuring that no conflict or adversity arises between the class and class counsel, the proper procedure in Oregon should ensure that attorney fee awards in class-action proceedings are *always* subject to the control of the court in which the class-action proceeding is pending, regardless of any written fee agreement."

(Emphasis in original.)

[20] Said another way, from a contingent-fee practice market-based perspective, "class action lawyers working to generate common funds are in big business, while individual contingent-fee practitioners are in small business, generally speaking." Conte, 1 *Attorney Fee Awards* § 1:9 at 26.

that range when the fund is extraordinarily large or small relative to the hours of work reasonably expended by the attorneys. *Id*. § 2:8 at 106-14; *see also* Conte & Newberg, 4 *Newberg on Class Actions* § 14:6 at 550 (20 to 33 percent is usual range for securities and antitrust litigation). A 50 percent-of-fund fee remains the usual upward limit, so that the fee does not consume a disproportionate portion of the fund recovered. Conte, 1 *Attorney Fee Awards* § 2:8 at 106; Conte & Newberg, 4 *Newberg on Class Actions* § 14:6 at 550. But such a percentage is extraordinary. The median of the usual range—25 percent—is used by many courts as a reasonable starting point for common-fund awards in class actions, with deviations made based on circumstances justifying an upward or downward adjustment. Conte, 1 *Attorney Fee Awards* § 2:8 at 113.

Here, the contingent fee agreement that Strawn and his attorneys entered into was at the upward limit: 50 percent of any fund awarded. For present purposes, we will assume (but need not decide) that that percentage might have been appropriate if this case had been litigated for Strawn in his individual capacity only. In this class action, however, Strawn's attorneys benefitted from significant economies of scale. They were able to rely on evidence that was common to all the class members, rather than having to produce individualized proofs of the terms of their contracts, the acts that breached those contracts, and the reliance by the class members that was necessary to prove the fraud claim. *Strawn*, 350 Or at 340-44 (describing legal and factual basis for claims); *id*. at 351-62 (holding that reliance for fraud claim did not have to be established through individual proofs, but could be inferred from evidence common to class). And the class action aspect of the case undoubtedly aided Strawn in obtaining the $8 million punitive damages award, which depended on proof of reprehensibility through, among other class-based evidence, a showing of repeated, rather than isolated, wrongdoing. *See generally Goddard v. Farmers Ins. Co.*, 344 Or 232, 253, 179 P3d 645 (2008) (discussing reprehensibility factor that supports award of punitive damages). Thus, because this was a class action case, Strawn's attorneys likely generated a much larger common-fund award for significantly less effort than would

have been entailed in bringing individual claims for each class member.[21]

The remaining question is: What should an appropriate percent-of-fund fee be in this class action? The parties have not considered that question, and we conclude that we need not identify a particular percentage at this juncture. The total amount of attorney fees that Strawn's attorneys received at trial and in the Court of Appeals already amounts to 42 percent of the common recovery awarded to the class, and therefore already exceeds the normal range for class actions awards. This is not a case that has resulted in an exceptionally small common-fund award, which might justify going above that normal range. Thus, the comparison demonstrates that no enhancement of the lodestar calculation is warranted.

On Strawn's main petition for attorney fees, then, we reject Strawn's request for a multiplier or other enhancement of the base award of $202,719.

3. *Apportioning Fees Between Fee-Shifting and Common-Fund Awards*

What we have discussed so far is independent of how the fees should be allocated between the fee-shifting and common-fund awards. On that issue, Strawn asserts that about 40 percent of the fees sought in the main petition qualify for the fee-shifting award against Farmers, while 60 percent of those fees qualify for the award from the common fund. Farmers does not dispute Strawn's allocation, with the exception of the percentage allocation that Strawn seeks for the post-opinion proceedings and the attorney fee petition. We accept Strawn's proposed allocation, to the extent that Farmers does not dispute it.[22] Of the $171,600

---

[21] Indeed, such efficiencies are a prerequisite to maintaining a class action. *See* ORCP 32 B (trial court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy").

[22] Strawn has allocated all common work performed on the fee-shifting (contract) and common-fund (fraud) claims to the fee-shifting award only. That approach seems problematic. This is not a case that involves both a fee-generating and non-fee-generating claim. *See, e.g.*, *Estate of Wesley E. Smith v. Ware*, 307 Or 478, 481, 769 P2d 773 (1989) (statutory fees can be awarded for work on both fee-generating and non-fee-generating claims, where work done on claim for which fee is authorized would have been incurred regardless of the non-fee-generating

in attorney fees whose apportionment Farmers does not dispute, we therefore conclude that $59,268 should be apportioned to the fee-shifting award and $112,332 to the common-fund award. We turn to the disputed allocation for the post-opinion proceedings and the attorney fee petition.

In that regard, Strawn asks this court to attribute to the fee-shifting award 99 percent of the time spent preparing the fee petition and responding to two post-opinion motions filed by Farmers: a petition to reconsider the opinion, and a motion to recuse one justice and, because of the recusal, to rehear the case. This court denied both motions by written opinion. *Strawn*, 350 Or at 521. Farmers's expert asserts that only 10 percent of the time spent responding to the petition to reconsider and the motion to recuse should be attributed to the fee-shifting award, while the time spent preparing the attorney fee petition should be divided equally between the fee-shifting award and the common-fund award.

We agree that Strawn's allocation of 99 percent of that time to the fee-shifting award is not appropriate. Significant portions of the work necessarily benefitted the common-fund claims only. On reconsideration, for example, the only issue presented related to this court's holding as to the fraud claim (*i.e.*, the petition for reconsideration asserted that this court had improperly eliminated the reliance requirement of fraud by permitting classwide reliance to be inferred from evidence common to the class rather than established by individualized proof).[23] As we have

claim). Rather, here, both the contract and fraud claims are fee-generating claims, with the fees payable from different sources. To the extent that work on the claims was common to both, so that either claim would have required that same work regardless of the existence of the other, the more logical approach would be for the two sources for the awards to bear the fees for the common work equally. *See Honeywell*, 310 Or at 213 (to further purpose of each award, reasonable attorney fee award should be paid from both authorized sources where case involves both statutory fee award and common-fund award from punitive damages recovery). Farmers has not objected to Strawn's allocation on that basis, however. Consequently, we accept Strawn's proposed allocation without agreeing that his method of allocating all work common to both claims to the fee-shifting award is the appropriate one.

[23] Farmers's petition did also seek reconsideration based on the same facts that underlay Farmers's motion to recuse. Recusal and rehearing would have affected the two contractual claims that were subject to a fee-shifting award under ORS 742.061(1), as well as the fraud claim. Strawn's response to the petition for reconsideration, however, merely incorporated by reference his response to the

noted and as Strawn has conceded, the fee-shifting award authorized by ORS 742.061(1) does not apply to the fraud claim. Consequently, reasonable fees for time that Strawn's attorneys spent responding to the petition to reconsider should be borne by the class, not shifted to Farmers.

Similarly, although Strawn's petition for attorney fees included time subject to a fee-shifting award, the petition addressed two matters that are not subject to a fee-shifting award: the requests for a common-fund award and for class administration fees. By definition, Strawn's entitlement to a common-fund award was independent of the fee-shifting award. And although the class administration fees may be recoverable *from the trial court* under ORS 742.061(1), those fees had nothing to do with the issues on appeal or review, and the Court of Appeals had already ruled that they were not properly sought on appeal, *Strawn*, 233 Or App at 410 (a ruling that Strawn did not challenge before this court).

For those reasons, we are satisfied that Strawn's proposed allocation—one percent to the common-fund award and 99 percent to the fee-shifting award—is not justified. The problem, however, is that the time records presented by Strawn provide insufficient information to determine the correct allocation. Strawn, as the party seeking the award, has the obligation to provide sufficient information to justify the fee award. Farmers has agreed, however, that 10 percent of the amount spent responding to the petition to reconsider and motion to recuse ($1,131.90 of $11,319) and 50 percent of the amount spent responding to the attorney fee petition ($9,900 of $19,800) are properly apportioned to the fee-shifting claims. In light of Farmers's position, we will apportion the hours attributable to the post-opinion proceedings and the attorney fee petition to the fee-shifting award accordingly. We conclude that the remainder is properly payable from the common fund.

Accordingly, we apportion the $202,719 in attorney fees that we have approved in connection with the original fee petition as follows. Strawn is awarded $70,299.90 (the $59,268 undisputed portion of the fee award plus

motion to recuse. Thus, the hours attributable to the motion to recuse fully account for the time Strawn's attorneys spent working on that issue.

$11,031.90 of the fees incurred in connection with the post-opinion proceedings and attorney fee petition) as a fee-shifting award payable by Farmers under ORS 742.061(1), which equals approximately 35 percent of the reasonable fees incurred. The remaining amount, $132,419.10, which is approximately 65 percent of the total, is awarded under the common-fund doctrine, to be paid from the punitive damages recovery in this case.

D.   *Supplemental Fee Petitions*

Strawn has filed two supplemental petitions for attorney fees. The first supplemental fee petition seeks additional fees incurred to address post-opinion proceedings in this court as well as to prepare for an anticipated petition for *certiorari* to the United States Supreme Court by Farmers. The second supplemental fee petition seeks fees incurred in contesting Farmers's *certiorari* petition before the United States Supreme Court. Farmers objects to both supplemental petitions.

We begin with Strawn's first supplemental petition for attorney fees. Strawn asks for $22,945 in fees, part of which is attributable to addressing Farmers's objections to the original attorney fee petition, and part of which is attributable to responding to an anticipated petition for *certiorari* to the Supreme Court of the United States. Farmers objects to the time sought by the first supplemental petition that related to Farmers's expected petition for writ of *certiorari* to the United States Supreme Court—specifically, time that Strawn's attorneys spent discussing the petition for *certiorari*, responding to Farmers's motion for stay pending *certiorari*, and negotiating with Farmers about the supersedeas bond. Farmers asserts that those fees were premature, because Strawn's request in the first supplemental fee petition preceded the filing of the *certiorari* petition. That is no longer true; Farmers since has petitioned the United States Supreme Court for *certiorari*, and the Court has since denied that petition. Accordingly, we overrule Farmers's only objection (that the request is premature) and allow those fees.

Neither party addresses to what extent the attorney fees claimed in the first supplemental fee petition

should be apportioned between the fee-shifting award and the common-fund award. As Strawn concedes in his second supplemental petition, however, the work done in responding to Farmers' *certiorari* petition is fairly attributable only to the fraud claim, which presented a potential federal question and was the exclusive focus of that petition. Likewise, the work done in anticipating the *certiorari* petition was also fairly attributable only to the fraud claim. Strawn has provided no documentation that would permit this court to determine what portion of the remaining fees sought in the first supplemental fee petition should be awarded against Farmers and what portion should be awarded from the common fund. We therefore decline to make such an allocation between the two awards. We conclude, however, that the fees requested by the first supplemental fee petition are reasonable in amount, and that they were reasonably incurred by Strawn's attorneys in defending the damages awards that accrued to the benefit of the class as a whole. Those amounts are therefore appropriate to award from the common fund. Accordingly, we award Strawn $22,945 in attorney fees on the first supplemental fee petition, to be paid from the punitive damages as a common-fund award.

We turn, then, to the second supplemental fee petition. In that petition, Strawn seeks fees that his counsel incurred in defending against Farmers's petition for *certiorari* to the United States Supreme Court. Strawn seeks a base award of $135,648 as compensation for 274.5 hours of legal work. As with the original fee petition, Strawn asks this court to impose a multiplier to those fees to compensate for the contingent nature of the award. Strawn concedes that none of those fees is attributable to the fee-shifting award; he seeks them only as a common-fund award. Farmers objects on a several grounds.[24]

---

[24] Strawn argues that we should not consider Farmers's objections, asserting that they are untimely because they were filed more than 14 days after Strawn filed the second supplemental fee petition. *See* ORAP 13.10(6) (allowing 14 days to object to attorney fee petition).

Strawn's position is not well-taken. Strawn's second supplemental fee petition was deficient because it lacked the proof of service required by our rules. *See* ORAP 1.35(2)(d) ("Anything filed with the Administrator shall contain * * * proof of service in the form of a statement of the date and manner of service * * *."). This court issued a notice of deficiency requiring Strawn to submit a certificate of service within 14 days or "the defective document will not be considered by the

Farmers first objects that this court lacks authority to award fees incurred before the United States Supreme Court. Relatedly, Farmers objects that there is no authority to award attorney fees to Robert Peck, Strawn's counsel of record in the Supreme Court, because that attorney is not admitted to practice in Oregon.

If Strawn were seeking to recover for that work through the fee-shifting award authorized by ORS 742.061(1), Farmers's arguments might be well taken because the statute authorizes a fee award only on an action brought "in any court in this state." In this instance, however, Strawn seeks those fees only from the punitive damages award under the common-fund doctrine. As we have already explained, the common-fund doctrine is an exercise of equity to prevent unjust enrichment. The right to recover for unjust enrichment does not depend on the unjust enrichment having occurred in court proceedings. *See* Dan B. Dobbs, 1 *Dobbs Law of Remedies* § 4.1(2), 557-63 (2d ed 1993) (listing broad categories of cases where plaintiff may be entitled to restitution from defendant for unjust enrichment, including when defendant breached contract, when defendant obtained title to property by wrongdoing, or when plaintiff conferred benefit on defendant by contract based on mistake or unforeseen change in conditions). The question, then, is not whether fees resulted from attorney representation in this court, or in any court at all. The question is whether the other class members would be unjustly enriched by receiving the benefits of that representation without having to pay for it. We have already concluded that they would. Accordingly, we have authority to award the requested fees from the common fund.

Farmers additionally asserts that Strawn's attorneys incurred an unreasonable number of hours in opposing the petition for *certiorari*. Among other responses, Strawn asserts that Farmers's petition contained numerous factual misrepresentations. For that reason, he was obligated

---

court." *See* ORAP 1.20(2) (authorizing court to strike any document that does not conform to any statute or rule). Because this court had given notice that the fee petition might effectively be stricken, the time for Farmers to respond to the fee petition was tolled. Farmers filed its objections within 14 days of the deficiency being cured.

to file a brief to correct those perceived misstatements, or risk waiving any objection to them. *See* S Ct Rule 15.2 (party potentially waives objection if brief in opposition does not address any perceived misstatements made in the petition for *certiorari*, including factual misstatements). Farmers did not submit any expert affidavit that would otherwise bring into question the reasonableness of the number of hours expended by Strawn's counsel to respond to the petition for *certiorari*. For those reasons, we reject Farmers's argument that the number of hours were unreasonable.

Finally, Farmers objects to Strawn's request for a multiplier on the attorney fees claimed in the second supplemental petition. We agree with Farmers that a multiplier is not appropriate for the same reasons that we concluded that a multiplier or other enhancement to the lodestar was not appropriate in connection with the original fee petition. We need not repeat that analysis at any length. As we have explained, the amount of fees that Strawn's attorneys have received to date (42 percent of the total class recovery) already compares favorably—and, indeed, potentially exceeds—a properly calculated reasonable percent-of-fund fee. With the attorney fees that we are awarding for work done on review to this court, Strawn's attorneys will receive an amount that equates with an even greater percentage of the total recovery (approximately 46 percent).[25] An enhancement to the lodestar fee that we have already determined is reasonable therefore is not warranted.

---

[25] To be clear, the amount of attorneys fees awarded through all stages of this case (trial, appeal, and now review) is slightly over $4 million, which is about 46 percent of the total common fund, but most of that amount is not being paid from the common fund. When the final math is done, the total amount of fees shifted to Farmers, given the multipliers applied by the trial court and Court of Appeals, exceeds $3.2 million, which is about 80 percent of the total attorney fees awarded. The class, on the other hand, will bear a total of $837,148.10 (including the fees awarded in this court), or about 20 percent of the total attorney fees awarded for the litigation. As those numbers reveal, from a percent-of-fund perspective, Farmers has significantly subsidized the fees that would otherwise be due from the punitive damages recovery. That is true even though Farmers is responsible for shifted fees only on the contractual claims and the compensatory damages recovery (about $900,000) and is not responsible for the work done on the fraud claim and punitive damages award ($8 million). Whether those respective amounts, viewed from a percent-of-fund perspective, represent a fair apportionment of the fees is not before us, because it is a consequence of the amounts awarded by the trial court and the Court of Appeals, which have not been drawn into question on review.

On the second supplemental fee petition, then, we award Strawn $135,648 in attorney fees, payable from the punitive damages award under the common-fund doctrine.

## II.   EXPENSES NOT PART OF HOURLY RATE

Strawn has asked this court to award him expenses that are not part of his attorneys' hourly rates, such as internal photocopying and computerized legal research. Strawn sought expenses of $6,928.15 in his main fee petition, $686.99 in his first supplemental fee petition, and $1,648.35 in his second supplemental fee petition. Farmers poses no objection to those expenses. We therefore allow them. *See Willamette Prod. Credit v. Borg-Warner Acceptance*, 75 Or App 154, 159, 706 P2d 577 (1985), *rev den*, 300 Or 477 (1986) ("Modern electronic accounting methods allow a more specialized billing for attorney fees. Courts should recognize the reality of modern legal business practices and include expenses specially billed to the client in the attorney fees award when they are properly documented and are reasonable.").

The $1,648.35 in expenses sought by Strawn's second supplemental fee petition is payable entirely from the common-fund award. Similarly, we conclude that the $686.99 in expenses sought in Strawn's first supplemental fee petitions also should be paid entirely from the common fund; those expenses should follow the underlying attorney fees sought by that supplemental fee petition, which (as we have already explained) are payable only as a common-fund award. The expenses sought by the original fee petition, however, must be apportioned between the fee-shifting claims and the common-fund claims. Neither Strawn nor Farmers makes any suggestion as to how those expenses should be apportioned. Because the expenses relate principally to the work done during the petition for review and merits stages of the proceeding before us, we conclude that it is appropriate to apportion the expenses in the same ratio that we apportioned the attorney fees awarded on the main fee petition: 35 percent to the fee-shifting award and 65 percent to the common-fund award.

Accordingly, we award Strawn $2,424.85 in expenses as a fee-shifting award, all from the original fee petition. We also award Strawn $6,838.64 in expenses as a common-fund award, representing expenses of $4,503.90 from the original fee petition, $686.99 from the first supplemental fee petition, and $1,648.35 from the second supplemental fee petition.

### III.   POST-DECISION, PREJUDGMENT INTEREST ON FEE AWARD

Strawn asks this court to award him post-decision, prejudgment interest on the appellate attorney fee awards— interest that begins accruing when the fees are granted, not when the appellate judgment issues. Thus, Strawn seeks interest on the Court of Appeals' attorney fee award beginning January 27, 2010, the date that the Court of Appeals issued its opinion granting those fees. Similarly, Strawn asks that interest on this court's attorney fee awards begin accruing on the date that this court awards them, not on the date that the appellate judgment issues.

Generally, interest cannot be awarded in the absence of either a contract or a statutory provision authorizing it. *See Dowling v. Albany Planing Mill*, 238 Or 425, 431, 395 P2d 143 (1964) ("[I]n the absence of an agreement to pay interest, interest can be recovered only in those circumstances authorized by statute." (citation omitted)); *Sorenson v. Oregon Power Co.*, 47 Or 24, 34, 82 P 10 (1905) ("In the absence of a contract to pay interest, the right to exact it must be found in the statute[.]" (citation omitted)). As statutory authority for prejudgment interest here, Strawn invokes ORS 82.010(1)(a), which authorizes an award of interest on "[a]ll moneys after they become due."[26]

---

[26] Specifically, ORS 82.010(1) provides:

"The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on:

"(a) All moneys after they become due; but open accounts bear interest from the date of the last item thereof.

"(b)  Money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent.

As we observed in *McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 288-89, 193 P3d 9 (2008), most claims for prejudgment interest arise under ORS 82.010 when the person from whom prejudgment interest is sought has breached a duty to pay money (subsection (1)(a)) or has wrongfully failed to return money to the person to whom it belongs (subsection (1)(b)). Litigation may be necessary to determine that the duty to pay or return money has been breached. But if a plaintiff prevails in such an action, the breach does not occur at the time of judgment. It is, instead, a past event. For litigation of that kind, the question whether the court may order prejudgment interest usually reduces to whether the amount due was readily ascertainable. *See, e.g.*, *Public Market Co. v. Portland*, 171 Or 522, 625, 138 P2d 916 (1943) (prejudgment interest can be awarded on unliquidated damages for contract breach when "the demand is of such a nature that its exact pecuniary amount was either *ascertained*, or *ascertainable* by simple computation, or by reference to generally recognized standards such as market price" (quoting Theodore Sedgwick, 1 *A Treatise on the Measure of Damages* § 300, 571 (9th ed 1912) (emphasis in original)).

An appellate court's award of attorney fees is not in that posture, however. To be sure, when an appellate court by order or decision awards attorney fees to a party, the amount becomes ascertainable. It does not, however, immediately become *due*. Rather, by statute, an appellate court attorney fee award is not effective until the appellate judgment issues. *See* ORS 19.450(2) ("appellate judgment is effective when a copy of the appellate judgment is entered in the [appellate] court's register and mailed by the State Court Administrator to the court from which the appeal was taken"). In effect, entry of judgment creates a monetary obligation that does not exist until that event occurs. An appellate court decision or order awarding the fees declares that such fees should be paid and sets their amount, but the legal obligation to pay arises only once the court's appellate judgment is entered in the register.

---

"(c) Money due or to become due where there is a contract to pay interest and no rate specified."

That result is consistent with the justification for the general rule, reflected in ORS 82.010(1)(a), that interest accrues on money only after it "becomes due." Once due, the debtor has the use of money to which the debtor is not entitled, while the delay in payment deprives the creditor of that use. *See* 1 *Dobbs Law of Remedies* § 3.6(1) at 333 ("Interest is the sum paid or payable for the use or detention of money. Just as rent is money paid for the use of property, interest is money paid for the use of other money."). To agree with Strawn that Farmers owes prejudgment interest on the appellate court attorney fee awards, we would have to conclude that Farmers was immediately obligated to pay Strawn's attorney fees once the Court of Appeals set the amount of fees, even though the entire review process remained outstanding. Farmers did not, however, default on any legal obligation to pay Strawn's attorney fees when it failed to do so on January 27, 2010. As to the fee-shifting award, then, we deny Strawn's request to award post-decision, prejudgment interest on the attorney fee awards.

As to the common fund recovery, we need not decide whether an award of prejudgment interest is authorized and appropriate for an attorney fee to be paid from such a fund.[27] We have already compared the amount of court-ordered fees Strawn's attorneys have been awarded to date and compared that amount to what they would recover pursuant to a reasonable percent-of-fund approach. Based on that comparison, we declined to enhance the lodestar fee that we determined to be reasonable to compensate for the risk of nonpayment and delayed payment of the fees. For those same reasons, even assuming (without deciding)

---

[27] Our authority to make that award would arise, not by statute, but under the common-fund doctrine. Again, the common-fund doctrine is an equitable doctrine that is intended to prevent unjust enrichment. *See Strunk*, 341 Or at 181 (the equitable common-fund doctrine "is primarily 'employed to realize the broadly defined purpose of recapturing unjust enrichment.'" (citation omitted)). We have held that, in equity, courts have discretion to award interest on an amount due and owing when, "under all the circumstances of the case, [it] seems equitable and just." *Emrich v. Emery et al*, 216 Or 88, 99, 335 P2d 604, *on reh'g*, 337 P2d 972 (1959) (alteration in original; citations and internal quotation marks omitted). When the issue is attorney fees for work undertaken on a contingency basis, and prejudgment interest is sought as a way to compensate for delay in the payment of attorney fees, it is difficult to see why that concern is not subsumed within the analysis of whether to apply a multiplier or other enhancement for the contingency nature of the fee.

that we may, pursuant to our equitable authority, assess prejudgment interest against the common fund class recovery, we decline to do so in this case.

## IV. MOTION FOR CLASS INCENTIVE AWARD

Strawn asks this court to award him $5,000 as an incentive fee for serving as the class representative in this case, such award to be paid from the punitive damages award. Farmers opposes the request.

Strawn's motion to award a class incentive fee duplicates similar motions that Strawn filed in the trial court and the Court of Appeals. The trial court awarded Strawn $20,000 as an incentive fee; Farmers did not challenge that award on appeal, so the validity of that award was not presented to either the Court of Appeals or this court. The Court of Appeals, however, denied Strawn's motion requesting a $5,000 incentive award on appeal. *Strawn*, 233 Or App at 423-24 (so explaining). Strawn has petitioned this court for review of that ruling, and that petition has been held for this case.

Incentive fees are intended to address a cost burden that class actions disproportionately impose on the class representative. Every class action must have one or more named representatives (*see, e.g.*, FRCP 23(a); ORCP 32 A), and those representatives incur costs—monetary and otherwise—that the other members of the class do not. Those costs may include spending time learning about the case; being subject to the time, expense, and intrusiveness of discovery; and in some types of cases, such as employment discrimination actions, facing potential retaliation or loss of reputation. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L Rev 1303, 1305 (2006).

> "In some cases—consumer class actions, where the typical class-member recovery is low, being an example—a class member may even experience a net loss from acting as class champion because the small recoveries normally gained from the case are not enough to cover the increased costs of serving as the named plaintiff."

*Id.* at 1305-06.

Those costs may lead to what is sometimes termed a "free rider" problem, in which all the class members hope that someone else will assume the burden of serving as class representative. *Id.* at 1306. The costs also give the class representative an incentive to minimize his or her participation "because the named plaintiff gains only a fraction of the value added by his or her efforts on behalf of the class." *Id.*

To address those problems, courts across the nation have awarded incentive fees to class representatives in roughly 28 percent of all successful class actions. *Id.* at 1307. Generally, the awarded incentive fees represent only a small fraction of the sum recovered by the class—on average, 0.16 percent of the class recovery, with a median incentive fee of only 0.02 percent of the class recovery. *Id.* at 1308. "The average award per class representative was $15,992 and the median award per class representative was $4,357." *Id.*

Yet the award of incentive fees to the class representative is not without controversy. There are even problems justifying the award conceptually. Writing for the Seventh Circuit Court of Appeals, Judge Richard A. Posner has noted:

> "The basis for an award of fees in a common-fund case is, as we said, restitutionary, and the law of restitution (excepting salvage in admiralty) generally confines the right to restitution to professionals, such as doctors and lawyers. 2 George E. Palmer, *The Law of Restitution*, ch. 10 (1978). If you dive into a lake and save a drowning person, you are entitled to no fee. The named plaintiff is not a professional; he is, at most, a public-spirited member of the class."

*Matter of Continental Illinois Securities Litigation*, 962 F2d 566, 571 (7th Cir 1992). Judge Posner went on to explain, however, that courts generally had not followed that reasoning:

> "Yet the usual formulations of the common-fund doctrine describe the plaintiff rather than his lawyer as the person entitled to be compensated for the expenses he has incurred in conferring a benefit on the (other) beneficiaries of the common fund. The principal expense is the attorney's fee,

but there can be others, provided they are not personal. Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable."

*Id*. (citations omitted).

In the context of approving settlement agreements, courts have often expressed concern that granting extra benefits to the class representatives may encourage improper behavior. As one court explained:

"Although it is laudable that plaintiff undertook to prosecute this litigation, the court perceives no circumstances warranting a special award. A class representative is a fiduciary to the class. If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."

*Weseley v. Spear, Leeds & Kellogg*, 711 F Supp 713, 720 (EDNY 1989).[28] Those concerns, however, are limited to the settlement context; they do not come into play when (as here) the parties litigated the case to a final decision.

In this case, we are persuaded that Strawn should be awarded an incentive fee from the punitive damages award. The incentive fee that Strawn received from the trial court does not account for the risk he undertook on appeal. By serving as class representative through the appeal and review process, Strawn incurred a substantial risk of being required to pay Farmers's costs, even if large portions of the

---

[28] *See also Holmes v. Continental Can Co.*, 706 F2d 1144, 1148 (11th Cir 1983) ("Settlements entailing disproportionately greater benefits to named parties are proper only when the totality of circumstances combine to dispel the cloud of collusion which such a settlement suggests." (Internal quotation marks and citation omitted).); *Shelton v. Pargo, Inc.*, 582 F2d 1298, 1315 (4th Cir 1978) (trial court evaluating pre-certification settlement of class action must focus on possibility of collusion between class representative and defendant; in doing so, trial court should "conduct a careful inquiry into the terms of the settlement, particularly the amount paid the plaintiff in purported compromise of his individual claim and the compensation to be received by plaintiff's counsel, in order to insure that, under the guise of compromising the plaintiff's individual claim, the parties have not compromised the class claim to the pecuniary advantage of the plaintiff and/or his attorney").

award were upheld on appeal. *See* ORAP 13.05(3) (costs may be awarded to party who obtains substantial modification of judgment on appeal). Strawn has estimated—and our own review suggests—that those costs could have exceeded $20,000. That risk was not shared with the rest of the class; because Strawn is the only named plaintiff, he was the principal person who could be required to pay those costs. *See* ORCP 32 M(1)(b) ("If under an applicable provision of law a defendant * * * is entitled to attorney fees, costs, or disbursements from a plaintiff class, only representative parties and those members of the class who have appeared individually are liable for those amounts."). At the same time, Strawn's personal share of the judgment against Farmers was only $1,450.64, plus the $20,000 incentive fee approved by the trial court.[29] In other words, Strawn put himself at distinct risk among the class of being subject to a cost award that could easily have eliminated his entire recovery in the action, and that could have been more than 30 times greater than his actual damages, even if he was largely successful in defending the verdict and the other class members mostly retained the benefit of the judgment.[30]

Under those circumstances, we conclude that it would be unjust for the class members to retain the benefit of Strawn's defense of the judgment on appeal and review without compensating him for the personal risk that he undertook on their behalf. Accordingly, we award Strawn a $5,000 incentive fee, payable from the punitive damages award.

## V.   CLASS ADMINISTRATION FEES; MOTION TO STAY APPELLATE JUDGMENT

In both the original fee petition and the second supplemental fee petition, Strawn requests an award of fees

[29] The general judgment awarded Strawn $412.50 in compensatory damages plus $197.22 in interest, for a total compensatory damages award of $609.72. Each class member was also awarded $840.92 as their share of the punitive damages award; Strawn received $20,840.92, which included the incentive fee.

[30] That is, in fact, essentially what had happened in the Court of Appeals before this court heard the matter on review. Because the Court of Appeals had reduced the punitive damages award substantially, Farmers likely would have been designated the prevailing party and been awarded costs that would have wiped out Strawn's recovery. The other class members, however, still would have recovered all actual damages, albeit with a lesser award of punitive damages.

incurred in administering the class post-trial, together with expected class administration fees in the future. As Strawn admits, the Court of Appeals denied those fees, directing that they should be sought from the trial court. *See Strawn*, 233 Or App at 410 (so noting). No party challenged the propriety of that ruling on review, and we decline to consider the merits of that conclusion. *See* ORAP 9.20(2) (generally, court will consider on review only those questions "that the petition or response claims were erroneously decided by" the Court of Appeals). Strawn "simply request[s] that this Court identify clearly whether or not the class administration fees and costs \*\*\* are included in its award, \*\*\* so that there will be no dispute over whether [Strawn has] the right to include those fees and costs in a supplemental submission to the trial court." We deny the request for class administration fees here, without prejudice to Strawn seeking an award of those fees by appropriate application to the trial court.

One final motion requires disposition. Farmers filed a motion to stay issuance of the appellate judgment while it sought a petition for *certiorari* from the United States Supreme Court. While this matter was pending, the Supreme Court denied the petition. Accordingly, we dismiss the motion for stay as moot.

## VI.   CONCLUSION

The petitions for attorney fees for proceedings following the decision of the Court of Appeals are allowed in part and denied in part as follows. Strawn is awarded $72,724.75 in attorney fees and expenses not part of attorney fees ($70,299.90 and $2,424.85 respectively), that amount to be paid by Farmers under ORS 742.061(1). Strawn also is awarded another $297,850.74 in attorney fees and expenses not part of attorney fees ($291,012.10 and $6,838.64 respectively on all three fee petitions), that amount to be paid from the punitive damages award in this case. Strawn is awarded a $5,000 class incentive fee to be paid from the punitive damages award in this case. The request for class administration fees is denied without prejudice to Strawn seeking an award of those fees by appropriate application to the trial court. Farmers's motion to stay issuance of the appellate judgment is dismissed as moot.