Michael MIGIS,
individually, and on behalf of
all others similarly situated,
*Plaintiff-Respondent
Cross-Appellant,*

*v.*

AUTOZONE, INC.,
a Nevada corporation,
*Defendant-Appellant
Cross-Respondent.*

Multnomah County Circuit Court
071113531; A150540

387 P3d 381

Roy Pulvers argued the cause for appellant-cross-respondent. With him on the opening brief was Hinshaw & Culbertson LLP. With him on the combined reply and answering brief on cross-appeal and the reply brief on cross-assignment of error was Holland & Knight LLP.

A E Bud Bailey argued the cause for respondent-cross-appellant. On the briefs were J. Dana Pinney and Bailey, Pinney & Associates, LLC.

Mark A. Friel and Stoll Stoll Berne Lokting & Shlachter PC filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

**DEVORE, J.**

Plaintiff Migis filed a class action against his former employer, defendant AutoZone, Inc., on behalf of himself and current and former employees of defendant. He alleged several wage-violation claims, seeking damages and statutory penalties. After a jury trial and bench trial, defendant appeals a general judgment that awarded plaintiff and other class members $110,030 in damages, $2,439,266 in statutory penalties, and $1,144,058 in prejudgment interest on the damages and statutory penalties. Defendant also appeals a supplemental judgment that, in addition to other things, awarded $4,249,665.49 in attorney fees to plaintiff. As relevant on appeal, plaintiff's wage-violation claims are (1) that current and former employees were not paid for the time they worked off the clock (the off-the-clock claims), and (2) that defendant failed to timely provide final wages upon termination of employment (the final-wages claim). Plaintiff cross-appeals, challenging the trial court's rulings concerning a meal-break claim and the court's failure to award additional civil penalties.

Defendant raises nine assignments of error. In its first assignment, defendant contends that the trial court erred when it certified the classes and denied defendant's two motions to decertify the classes. As we explain in this opinion, we reject defendant's challenge to class certification as to the off-the-clock claims on the merits and its certification challenge to the final-wages claims because its arguments on appeal were not preserved.

In defendant's third and fourth assignments of error, defendant challenges civil penalties that the trial court imposed under ORS 652.150 and ORS 653.055. Those assignments contend that, as to the off-the-clock claims, the court erred in awarding civil penalties in an amount of $2,348,791 without a jury finding that defendant willfully failed to pay unpaid wages. For the reasons we explain below, we agree with defendant that a finding of willfulness was required for the court to impose civil penalties for the off-the-clock claims. Accordingly, we reverse and remand the general judgment on that basis.

Defendant's second, fifth, sixth, eighth, and ninth assignments of error also concern the civil penalties imposed.[1] Defendant's second assignment asserts that the trial court was not authorized to impose $862,894 in civil penalties, prejudgment interest, and attorney fees after tolling the statutory limitations period for civil penalties under ORCP 32 N by way of another action filed against defendant (the *Joarnt* action).[2] That assignment fails to comply with ORAP 5.45, and we decline to review it. As to defendant's fifth assignment, challenging prejudgment interest on the penalties, we reject it without written discussion. Defendant's eighth and ninth assignments claim as error the trial court's denial on procedural grounds of defendant's prejudgment and postjudgment motions challenging the penalties imposed. Our reversal of the penalties as to the off-the-clock claims also obviates the need to address much of what was challenged in those motions, but to the extent that the motions raised arguments regarding the final-wages claim, namely additional penalties tolled due to the filing of the *Joarnt* action, we conclude that the trial court's denials of the motions on procedural grounds were not made in error.

In its seventh assignment of error, defendant appeals the supplemental judgment, disputing the statutory bases for plaintiff's entitlement to the award of attorney fees and contending that the trial court exceeded its discretion by applying a "fee multiplier enhancement" to the attorney fee. Our reversal of the general judgment necessitates the reversal and remand of the supplemental judgment, ORS 20.220(3), but we nevertheless address some of the issues

---

[1] Our disposition as to defendant's third and fourth assignments obviates the need to address defendant's sixth assignment of error, which asserts that the federal due process limits for punitive damages set forth in *BMW of North America, Inc. v. Gore*, 517 US 559, 568, 116 S Ct 1589, 134 L Ed 2d 809 (1996), apply to the statutory penalties imposed as to the off-the-clock claims.

[2] In 2005, claims similar to those pleaded in this case were filed in a separate action against defendant, *Joarnt v. AutoZone*, also in Multnomah County Circuit Court (Case Number 0503-02795). The judge in this case was originally assigned to the *Joarnt* action; the Multnomah County Circuit Court presiding judge disqualified him from that case and reassigned it to another judge. The additional civil penalties tolled under ORCP 32 N for the *Joarnt* claims totaled $862,894.

defendant raises in its seventh assignment because those issues are likely to arise on remand.[3]

Plaintiff's cross-appeal raises several assignments of error—all of which we reject without written discussion. That disposition obviates our need to address defendant's cross-assignment of error on cross-appeal. Accordingly, we affirm on cross-appeal.

## I. BACKGROUND

To provide general context for the assignments of error, we outline the procedural history of this case. We provide more detail later in our discussion of each individual assignment. In November 2007, plaintiff filed this action on behalf of himself and current and former employees of defendant, in which he alleged wage and hour violations. As relevant on appeal, plaintiff alleged, among other claims, that employees were required to work off the clock (the off-the-clock claims) and that defendant would not timely pay final wages as required by ORS 652.140 (the final-wages claim). Plaintiff sought class certification, and, in March 2009, the court certified the off-the-clock class and the final-wages class.

The claims proceeded to trial in January 2010. In addition to his final-wages claim, plaintiff sought to prove that, as to his off-the-clock claims, wages were owed for (1) the time employees spent between disarming the alarm at a store's entrance and clocking in, (2) the time spent between clocking out and setting the alarm, and (3) the time spent traveling between defendant's stores to deliver parts or work another shift. The parties disputed whether the jury was required to find that defendant willfully violated the wage and hour laws as to the off-the-clock claims in order to impose civil penalties under ORS 652.140, ORS 652.150, and ORS 653.055. The trial court sided with plaintiff, deciding that a finding of willfulness applied only to the final-wages

---

[3] Plaintiff moved to dismiss defendant's appeal on the ground that its notice of appeal was untimely. The appellate commissioner denied the motion, and plaintiff moved for reconsideration of the order. The acting chief judge deferred the motion to the merits panel. We conclude that the commissioner properly denied the motion. Accordingly, we allow reconsideration and adhere to the commissioner's prior order.

claim and reserved the imposition of civil penalties as to the off-the-clock claims as a matter to be determined by the court. The jury returned a verdict against defendant as to the off-the-clock claims and the final-wages claim, awarding $110,030 in damages. In April 2010, the court held a bench trial in which it determined civil penalties in the amount of $2,439,266. In September 2011, defendant filed two motions: the first to reduce the civil penalties, arguing that the penalties exceeded what was permissible under federal due process, and the second, an alternative ORCP 64 motion for a new trial. The court denied those motions on substantive and procedural grounds. After the court entered a general judgment in November 2011, defendant renewed the arguments it had made before judgment by means of another ORCP 64 motion for a new trial along with an ORCP 63 motion for a judgment notwithstanding the verdict. Those motions were denied in February 2012.

In June 2012, plaintiff filed a supplemental fee petition under ORCP 68. After discovery and a hearing, the trial court awarded attorney fees. The court determined that plaintiff was entitled under ORS 652.200 and ORS 653.055 to more than $2.2 million in fees. The trial court found, in part, that, because of the "risks involved" and the "excellent results" obtained by plaintiff's counsel, a "multiplier enhancement" to double the lodestar fee was appropriate, resulting in a fee award of more than $4.4 million.

## II.  DISCUSSION

### A.  *Certification*

We begin with defendant's first assignment of error in which it contends that the trial court erred by certifying, and then declining to decertify, the off-the-clock class and the final-wages class. The assignment concerns three rulings: (1) the pretrial order granting certification; (2) the order denying defendant's motion to decertify the class, which was made at the end of the trial; and (3) the order denying defendant's renewed motion to decertify the class, which was made well after the trial. Defendant advances three arguments as to why the court erred: (1) class certification lacked adequate proof of commonality, ORCP 32 A(2); (2) a class action was not superior to other methods

of adjudicating the claims of the class members, namely, common issues did not predominate over individual ones, ORCP 32 B(3); and (3) class certification violated its federal due process rights. For the reasons discussed below, we reject defendant's challenges. We first set out the relevant procedural background and then discuss the pretrial certification and the post-trial denial of defendant's motion to decertify. Finally, we discuss defendant's end-of-trial motion to decertify.

Before trial, plaintiff moved to certify three classes, which the trial court granted, determining that the classes met all of the requirements of ORCP 32, and as pertinent on appeal, that there were common questions of law or fact, ORCP 32 A(2). Those questions were, as to the final-wages class, whether defendant "systematically failed to pay Plaintiff and all putative class members their final wages when due," in violation of ORS 652.240 and, as to the off-the-clock class, whether defendant's policies and practices "suffered and permitted" employees to work before clocking in and out and whether employees were required to travel between stores without compensation. Each question asked whether such practices resulted in unpaid wages and minimum wage and overtime violations.

The trial court, in its class action certification order, also determined that, under ORCP 32 B, class action litigation was superior to litigating the claims by other available methods for the following reasons: (1) "[p]rosecution of hundreds of separate, individual cases of the same or similar claims is impractical, and would undermine the mandate of ORCP 1 B and general motions of judicial economy"; (2) "common questions of law and/or fact predominate over individual questions" for each proposed class; (3) "[f]ew reasons exist to cause an individual to desire control of the prosecution of their case"; (4) "Multnomah County is a desirable location to concentrate the litigation"; and (5) the "classes proposed are manageable."

On February 2, 2010, defendant moved to decertify the classes. The trial court denied the motion, concluding, "[N]othing persuades me that the initial certification of the class should be changed." The next day, the class claims

were submitted to the jury, which found that the class members were not timely paid final wages and that they were unpaid for off-the-clock work. On September 20, 2011, defendant renewed its motion to decertify, contending that certification violated its due process rights, based on "new case authority," namely, *Wal-Mart, Inc. v. Dukes*, 564 US 338, 131 S Ct 2541, 180 L Ed 2d 374 (2011). The court denied that motion because defendant's arguments were "not supported by the factual record in this case or by Oregon law." The court added that "*Wal-Mart* is distinguishable and otherwise not controlling authority."

1. *Certification under ORCP 32 and standards of review*

Commonality is one of five initial requirements for class certification—numerosity, commonality, typicality, adequacy, and notice—all of which must be satisfied. ORCP 32 A; ORCP 32 B; *see Pearson v. Philip Morris, Inc.*, 358 Or 88, 106, 361 P3d 3 (2015) ("If any one of the five requirements is not satisfied, the case cannot go forward as a class action."). Of those initial requirements, defendant challenges only commonality, ORCP 32 A(2). That subsection provides for class certification if there are "questions of law or fact common to the class." We review a trial court's commonality determination for legal error "based on the record before the trial court and the trial court's findings, if any." *Delgado v. Del Monte Fresh Produce, N. A., Inc.*, 260 Or App 480, 489, 317 P3d 419 (2014) (internal quotation marks omitted). Our review of commonality

"asks only if *there are* questions of law or fact common to the class. ORCP 32 A(2). It does not test how central the common questions are to the resolution of the action. Nor does it take into account the nature of the proof required to litigate those common issues."

*Pearson*, 358 Or at 109-10 (emphasis in original). We have said that to satisfy the commonality requirement for class certification, we "look at whether the claimed common issues are susceptible to and appropriate for proof of common evidence." *Delgado*, 260 Or App at 491.

In addition to satisfying the initial requirements of ORCP 32 A, the court, as set out in ORCP 32 B, must also

find that a "class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." (Emphasis added.) Predominance is one of eight factors for determining superiority under ORCP 32 B for which it must be determined to what extent "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." ORCP 32 B(3). Further, predominance asks the questions commonality does not—the centrality of common questions to the resolution of the action and the nature of proof required to litigate common issues: The "'predominance criterion is far more demanding' than the commonality requirement." *Pearson*, 358 Or at 109-10 (quoting *Amchen Prods., Inc. v. Windsor*, 521 US 591, 623-24, 117 S Ct 2231, 138 L Ed 2d 689 (1997).

> "In effect, predominance asks: What do the individual class members have in common, what don't they have in common, and how much will those similarities and dissimilarities matter in litigating the case? In practical terms, the inquiry is designed to determine if proof as to one class member will be proof as to all, or whether dissimilarities among the class members will require individualized inquiries. How the predominance inquiry is answered, then, is a key factor in the trial court's discretionary assessment of whether a class action will be a fair and efficient means of litigating the case, and thus superior over other available means to resolve the controversy."

*Id.* at 110-11. "If the record suggests legitimate and legally material factual differences among the class members that a defendant is entitled to expose through individualized inquiries—what [has been termed] 'fatal dissimilarities' among the class—the predominance inquiry must take those individualized inquiries into account." *Id.* at 114 (footnote omitted).

The single predominance factor is reviewed for legal error, *Delgado*, 260 Or App at 489, but superiority, which involves all the factors listed under ORCP 32 B, is reviewed for abuse of discretion, *Pearson*, 358 Or at 106. The trial court "has considerable discretion in weighing all of the factors that apply in a given case and determining if a class action will be superior means of litigating the class claims." *Id.* at 106-07. Moreover, a "trial court's determination that [an]

action may proceed as a class action 'is largely a decision of judicial administration * * * [and, in] making such decisions the trial court is customarily granted wide latitude.'" *Id.* at 107 (quoting *Newman v. Tualatin Development Co., Inc.*, 287 Or 47, 51, 597 P2d 800 (1979)). In keeping with the fact that a superiority determination is a matter of judicial administration, attempts to decertify late in the litigation process are disfavored. *See Delgado*, 260 Or App at 489 (the late timing of defendant's decertification motion supported the trial court's exercise of discretion when the defendant knew or should have known that it would seek to present witness testimony "in an attempt to call into question whether all workers were subject" to the practice of requiring employees to work off the clock).

2. *The trial court's certification and denial of the renewed motion for decertification*

To begin with, we reject defendant's challenge to the pretrial certification and the denial of the post-trial motion for decertification. As to the pretrial certification, defendant's challenge to the class certification on appeal rests on its assertion that *trial evidence* "revealed an abundance of individualized fact issues and anomalous experiences that overwhelmed any claimed 'common' class issues." Because its argument on appeal depends on evidence adduced at trial, or its purported lack thereof, the challenge to the court's certification fails because the trial court could not have erred in certifying the classes before trial based on evidence that was not yet before it.

We also reject defendant's challenge to the trial court's denial of defendant's second motion to decertify, made in September 2011, well after the February 2010 trial. That challenge relied on what defendant cited as controlling authority, *Wal-Mart*, in which the United States Supreme Court held that the certification of a class of some 1.5 million female employees lacked proof of commonality that the employer had discriminated against them, as required by FRCP 23(a)(2) (the FRCP equivalent to ORCP 32 A(2)). 564 US at 343. Defendant contends that that decision was decided on grounds that class certification violated the Due

Process Clause of the Fourteenth Amendment to the United States Constitution and that, likewise, certification in this case violated its due process rights. The trial court denied the motion on the basis that *Wal-Mart* is "distinguishable and otherwise not controlling authority."

We agree. The Court in *Wal-Mart* did not announce that certification of the class violated federal due process; rather, it concluded that class certification did not satisfy the commonality requirement under FRCP 23(a)(2) because it could not produce a "common answer to the crucial question" of why class members were discriminated against. 564 US at 352. Moreover, defendant fails to explain, and we fail to see, how *Wal-Mart* controls in this case, which resolves state claims and applies state class-certification procedures. Thus, the trial court did not err in denying defendant's post-trial motion to decertify.[4]

3. *The trial court's denial of defendant's end-of-trial motion to decertify*

Thus, defendant's challenges to certification of the off-the-clock class and the final-wages class are reduced to its first motion to decertify, which was made on February 2, 2010, the last day of trial testimony, on the grounds that certification did not satisfy the requirement of commonality under ORCP 32 A and superiority under ORCP 32 B. We first reject defendant's arguments as to the off-the-clock class. Second, we conclude that defendant's arguments concerning the final-wages class were unpreserved.

---

[4] On appeal, plaintiff argues that defendant's motion made after the jury verdict was barred under ORCP 32 C(1), which provides:

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether and with respect to what claims or issues it is to be so maintained and shall find the facts specially and state separately its conclusions thereon. *An order under this section may be conditional, and may be altered or amended before the decision on the merits.*"

(Emphasis added.) According to plaintiff, because the jury verdict was a "decision on the merits," ORCP 32 C(1) precludes decertification because doing so would alter or amend the class. Because the trial court denied defendant's renewed motion to decertify on the grounds that *Wal-Mart* is "distinguishable and otherwise not controlling authority," we affirm its determination on that basis and do not reach whether ORCP 32 allows post-jury verdict decertification.

### a. Off-the-clock class

On appeal, we understand defendant to assert that, because there was some evidence in the record that employees spent time between opening and closing the stores on personal tasks, which, according to defendant was time spent at work for which it had no obligation to pay, and because the time involved in opening and closing the stores varied, those facts were individualized issues that overwhelmed any common issues to the class.[5] We disagree.

The commonality question about the off-the-clock class asks if the "claimed common issues are susceptible to and appropriate for proof of common evidence." *Delgado*, 260 Or App at 491. Plaintiff sought to prove that defendant had a policy or practice of not paying for time spent between setting the alarm and opening and closing the stores. "Proof of an employer custom or practice necessarily requires class-wide common proof." *Id.* Moreover, determining whether a class has commonality neither tests "how central the common questions are to the resolution of the action" nor takes "into account the nature of the proof required to litigate those common issues." *Pearson*, 358 Or at 109-10. Defendant's ORCP 32 A(2) challenge seeks to do both, and, accordingly, we reject it.

Likewise, we are not persuaded by defendant's predominance argument. As a threshold matter, we note that defendant's framing of its argument is critically off the mark. That is, defendant contests only whether the class met the predominance inquiry and does not argue that the class fails superiority. As noted, predominance *is one of eight factors* which the trial court considers to determine whether class-wide litigation is "superior to other available methods for the fair and efficient adjudication of the controversy," ORCP 32 B. Although, how "the predominance inquiry is

---

[5] As to unpaid travel time between stores, defendant points to the fact that the jury was not persuaded by the class representative's travel time claim. Defendant's argument is not sufficiently developed to allow us to address it, and we therefore reject it without further discussion. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) (it is not "our proper function to make or develop a party's argument when that party has not endeavored to do so itself").

answered * * * is a key factor in the trial court's discretionary assessment of whether a class action will be a fair and efficient means of litigating the case, and thus superior over other available means to resolve the controversy," *Pearson*, 358 Or at 111, ultimately, the relevant question is whether the trial court abused its discretion when it determined superiority of a class action under ORCP 32 B.

On appeal, defendant insists that decertification rests solely on a legal determination. ORCP 32 B, however, "includes the predominance of common questions of law and fact as a 'pertinent' matter that the trial court must consider. It does not require predominance as a *sine qua non* of certification of any class." *Shea v. Chicago Pneumatic Tool Co.*, 164 Or App 198, 207, 990 P2d 912 (1999), *rev den*, 330 Or 252 (2000); *see also Pearson*, 358 Or at 106-07 ("Neither the 'predominance' factor nor any of the other seven, however, is controlling. Rather, the trial court has considerable discretion in weighing all of the factors that apply in a given case and determining if a class action will be a superior means of litigating the class claims."); *Shea*, 164 Or App at 207 ("[T]he fact that the trial court concluded that common questions of law and fact did not predominate the action as a whole does not mean that, as a matter of law, the trial court cannot certify an issue class.")

Here it is not clear that the issue of predominance drove the trial court's denial of the motion to decertify; the court did not single out that factor in its ruling on the motion, which was made on the last day of trial. *Cf. Pearson*, 358 Or at 109 ("Because the trial court's superiority assessment was driven by its predominance conclusion, 358 Or at 106, the question at this juncture is only whether, based on this record, plaintiff's established that common issues predominate over individual ones, contrary to the trial court's conclusion.").

Nevertheless, even if we assume for the sake of argument that a lack of predominance could determine the superiority assessment, we reject defendant's arguments that it was legal error to conclude that common issues predominate over individual concerns. There are two reasons. Variance in the amount of time spent opening and closing the stores

is not a material fact that requires individual inquiries as to certification. Those differences concern a class member's entitlement to damages. "A class action is not inappropriate simply because each class member will have to make an individualized showing to recover damages." *See Delgado*, 260 Or App at 493.

Second, simply because there was witness testimony of time spent on personal tasks, such as putting on a coat, stowing lunches, or using the bathroom, defendant was not entitled to individualized inquiries to determine what class members were doing with their time during unpaid work periods. Defendant has not provided the legal basis for why a "personal task" such as putting away a coat or using the bathroom is time that is not compensable. Under the wage and hour statutes, "work time" includes "both time worked and time of authorized attendance." ORS 653.010(11). "Hours worked" means

> "all hours for which an employee is employed by and required to give to the employer and includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place and all time the employee is suffered or permitted to work. 'Hours worked' includes 'work time' as defined in ORS 653.010(11)."

OAR 839-020-0004(19).[6] Plaintiff's off-the-clock claim is that employees were required to be on defendant's premises before they were able to clock in and after they clocked out. Defendant fails to develop an argument that, under Oregon's wage and hour laws, time spent on "personal tasks" during the time an employee is required to be on his or her employer's premises is time that is not compensable.

---

[6] We note that the court instructed the jury that the class members had to prove that they were unpaid for periods of authorized attendance at their scheduled time, or while they were engaged in time worked when they were on defendant's premises. Moreover, the trial defined "worktime" to the jury as

"includ[ing] both time worked, and time of authorized attendance. Worktime and hours worked are all hours for which an employee is employed by, and required to give, to the employer, and includes all time during which an employee is necessarily required to be on the employer's premises on duty, or at a prescribed workplace, and all time the employee is suffered or permitted to work. Work requested or required is considered worktime. Work not requested, but suffered or permitted is also considered worktime."

Accordingly, we reject defendant's contention that whether an employee spent time on personal tasks during the opening and closing of stores is an individualized and material fact that predominates over common issues of fact.

### b. Final-wages class

As to the final-wages class, defendant's general argument is that the trial evidence was too varied and insufficiently competent to show that it systematically failed to timely pay final wages as required by ORS 652.140. More narrowly, defendant contends that it was entitled to litigate class members' claims individually, rather than through class action adjudication, because the claims depended on "proof of when the employee provided notice of intent to quit, and when each final paycheck was provided." Defendant argues that the defect of the differences is magnified because ORS 652.140 imposes different time periods for which an employer is obligated to pay final wages.[7] That is, under subsection 2(a), if an employee gives at least 48 hours' notice, the employer must pay wages due immediately at the time of quitting and, under subsection (2)(b), if the employee does not give such notice, the employer has five days—excluding

---

[7] ORS 652.140 provides, in relevant part:

"(1) When an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination.

"(2)(a) When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment.

"(b) Except as provided in paragraph (c) of this subsection, if the employee has not given to the employer the notice described in paragraph (a) of this subsection, the wages become due and payable within five days, excluding Saturdays, Sundays and holidays, after the employee has quit, or at the next regularly scheduled payday after the employee has quit, whichever event first occurs.

"(c) If the employee has not given to the employer the notice described in paragraph (a) of this subsection and if the employee is regularly required to submit time records to the employer to enable the employer to determine the wages due the employee, within five days after the employee has quit the employer shall pay the employee the wages the employer estimates are due and payable. Within five days after the employee has submitted the time records, all wages earned and unpaid become due and payable."

weekend days and holidays—to pay final wages. According to defendant, the evidence adduced at trial revealed factual discrepancies among employees regarding when they gave their notice and when they received their paychecks. Moreover, defendant challenges the testimony of the plaintiffs' expert, Dr. Fountain, who provided calculations of the average number of days that final paychecks were delayed. That testimony, defendant contends, was flawed (its foundation was "insufficient, unreliable") because it relied on evidence of the last day an employee worked, not when they were "terminated," and did not take into account weekend days and holidays. That flaw, contends defendant, deprived it of its fundamental due process rights.

In response, plaintiff contends that defendant failed to preserve its appellate arguments. A party who claims an error on appeal must preserve the error in the trial court before we will consider it. ORAP 5.45(1); *see Delgado*, 260 Or App at 487-88 ("The preservation rule allows the opposing party an opportunity to respond and the trial court an opportunity to understand the position and avoid or correct the error." (Citing *Quick Collect, Inc. v. Higgins*, 258 Or App 234, 239, 308 P3d 1089 (2013).)).

To the extent that defendant makes a due process argument regarding the final-wages claim and Fountain's testimony, we reject it because that argument was not made until its renewed motion for decertification, and as we noted above, defendant's reliance on *Wal-Mart* is misplaced.

To the extent that defendant makes an argument that individual concerns vastly outweigh common issues because the obligations under ORS 652.140 depend on when an employee has provided notice of intent to quit, that argument is not preserved. The argument made below to which defendant points—the final-wage claim is "absolutely dependent upon the date that *** an employer knows that the employee is quitting"—was made in support of a separately argued oral motion to dismiss, not to decertify. There, defendant argued that plaintiff's final-wages claim failed as a matter of law but did not explain to the court how the case authority it cited, *Wilson v. Smurfit Newsprint Corp.*, 197 Or App 648, 107 P3d 61 (2005), meant that individual issues

predominated over facts common to the final-wages class.[8] In its written motion to decertify, defendant asserted that "the evidence in this case is that final wages are paid on time unless store managers are unaware that the employee has quit." Not only does that argument attacking the sufficiency of the evidence fail to address the questions of commonality or predominance,[9] it fails to preserve defendant's argument on appeal that the class should be decertified because a willful violation of ORS 652.140 depends on proof of when an employee provided notice of intent to quit. Neither argument made below preserves defendant's argument on appeal because the arguments did not provide "the opposing party an opportunity to respond and the trial court an opportunity to understand the position and avoid or correct the error." *Delgado*, 260 Or App at 488. Thus, defendant's argument about class certification of the final-wages claim was not preserved for our review.

## B. *Willfulness*

In its third and fourth assignments of error, defendant argues that the trial court erred in awarding civil penalties without a jury finding that defendant willfully

---

[8] In *Wilson*, we considered whether the employer's failure to timely pay wages was willful, for purposes of imposing penalties under ORS 652.150, when it sold the facility in which the plaintiffs had worked. 197 Or App at 659. In that case, the employer's obligation to pay severance pay was set out in a collective bargaining agreement, and the employer argued that its failure to pay severance as final wages was not triggered because it was not aware of its obligation to pay until the Ninth Circuit affirmed an arbitrator's interpretation of a term of the CBA. *Id.* at 653-54, 666. Concluding that an employer willfully fails to pay wages "when it knows or reasonably should know all the facts that trigger the obligation under ORS 652.150," we held that the employer should have reasonably known of its obligation to pay severance benefits once the arbitrator rendered a decision construing the CBA. *Id.* at 665-67 (emphasis added). Even if defendant had preserved its argument on appeal, it has failed to sufficiently develop an argument that explains how our holding in *Wilson* applies to the argument it raises on appeal.

We also note that, as to the final-wages claim, the trial court differentiated claims with 48 hours' notice and without 48 hours' notice when it instructed the jury.

[9] We reject that argument directed at the sufficiency of the evidence because it poses a different question from the one we must answer on appeal. That is, the question here is whether the requirements of commonality or predominance are satisfied and not whether defendant was entitled to a directed verdict. *See Delgado*, 260 Or App at 491 n 3 ("Defendant's arguments as briefed *** focus on the sufficiency of the evidence to send the issues to the jury, a different question.").

failed to pay unpaid wages. That is, for the off-the-clock claims, the two categories of penalties challenged by defendant are (1) those for unpaid regular wages upon termination under ORS 652.150 (described by the parties as Type 3 penalties) and (2) those for unpaid overtime under ORS 653.055 (described by the parties as Type 2 penalties).[10] As we explain further below, ORS 652.150 provides that penalty wages are imposed if an employer "willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145[.]" At the same time, ORS 653.055(1) provides that if an employer fails to pay overtime, it is liable for "civil penalties provided in ORS 652.150." According to defendant, to impose penalties, those provisions required the jury to find that defendant's failure to pay wages for plaintiff's off-the-clock claims was willful.

In response, plaintiff argues (1) that defendant failed to preserve its claim of error because it failed to take exception to the jury instructions, ORCP 59 H,[11] and (2) defendant waived its claim of error because it failed to demand that the special verdict form include the question

---

[10] Three categories of penalties were imposed by the trial court. Type 4 penalties were imposed under ORS 652.150 on the final-wages claim, i.e., *untimely* providing final wages, for violating ORS 652.140. The jury found that that violation was willful, and defendant does not challenge that penalty on appeal. Type 3 penalties concerned the off-the-clock claims and were also imposed under ORS 652.150 and ORS 652.140, but the penalties were for the failure to provide unpaid regular wages upon termination of employment.

[11] ORCP 59 H provides:

"(1) *** A party may not obtain appellate review of an asserted error by a trial court in submitting or refusing to submit a statement of issues to a jury pursuant to subsection C(2) of this rule or in giving or refusing to give an instruction to a jury unless the party seeking review identified the asserted error to the trial court and made a notation of exception immediately after the court instructed the jury or at such other time as the trial court directed. The requirements of this rule do not preclude an appellate court from reviewing asserted errors in jury statements or instructions for legal errors that are apparent on the record.

"(2) *** The notation of exception required by subsection (1) of this section must be made orally on the record or in a writing filed with the court and must identify with particularity the points on which the exception is based. In noting an exception, a party may incorporate by reference the points that the party previously made with particularity on the record regarding the statement or instruction to which the exception applies."

of willfulness, ORCP 61 B.[12] Additionally, plaintiff reprises the contention he made below that a finding of willfulness was not required for the Type 3 penalties. For the following reasons, we disagree with plaintiff's arguments based on ORCP 59 H and ORCP 61 B, and we agree with defendant on the merits of its assignments of error.

### 1. *ORCP 59 H and 61 B*

Before trial, defendant submitted a proposed jury instruction that, to "recover a penalty wage, the plaintiff must prove the defendant's failure to pay wages was willful" and a special verdict form, asking the jury to find whether defendant's practice of withholding pay for plaintiff's off-the-clock claims was willful. Near the end of trial, on January 28, 2010, the trial court discussed the issue of willfulness with the parties in the following colloquy:

"[PLAINTIFF]:    The only place that willfulness, under the Oregon statute applies, is in the circumstances of unpaid wages at time of termination.

"THE    COURT: So    [plaintiff]    want[s]    to    limit the instruction on willfulness to that final wages on termination?

"[PLAINTIFF]:    That's correct.

"THE    COURT:    [Defendant], are you in agreement, that that is where willfulness applies?

"[DEFENDANT]:    Absolutely not.

"THE COURT:    You believe it's on every one of the penalties is—willfulness is required?

"[DEFENDANT]:    Right. Because this is what ORS 653.055 states: 'Any employer who pays an employee less than the wage to which the employee is entitled, is liable for the full amount of wages, less any amount actually paid

---

[12] ORCP 61 B provides, in relevant part:

"If *** the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires such party demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

to the employee by the employer, and for civil penalties provided under ORS 652.150.'

"So it doesn't just say, and civil penalties. It says, civil penalties under 652.150. And when you go to 652.150, 'Except as provided in 2 and 3 of this section, if an employer willfully fails to pay wages,' so the element of willfulness is included in every penalty."

Plaintiff countered that, because ORS 652.150 refers to ORS 652.140, which requires an employer to timely pay final wages, willfulness applied as a condition of imposing penalties for violations of ORS 652.140 but not overtime violations of ORS 653.055. The court responded:

"[W]hat [plaintiff] just said has been my understanding for about 25 or 30 years of Oregon law. So I am going to look at these statutes again.

"But, [defendant], unless I change my mind on what they mean, and I have thought one thing for many many years, unless I change my mind, I am not going to agree with you. But it does—except on 653.055, that's the—well, final wages on termination, both sides agree, need to have willfulness."

The trial court did not change its mind. Before the court instructed the jury, on February 2, it discussed the instructions it would give to the jury so as to allow the parties to take exceptions. Although, during the course of that colloquy, defendant referred to a proposed instruction that required the jury to find willfulness, it did so as an exception to plaintiffs' proposed jury instruction titled "Final Wages and Willfulness," which concerned the burden of an employer to timely deliver an employee's final wages when the employment relationship ends, *i.e.*, the final-wages claim.

At the end of the day—after 5:00 p.m.—the trial court, stating that it had made its rulings on the instructions, turned to the proposed special verdict forms. The court noted that it had made various rulings that were in accord with the special verdict forms proposed by plaintiff and, commenting that defendant had submitted something else entirely and had objected to the special verdict form that was in front of it, asked defendant if it had any other

specific objections for purposes of "fine tuning." The defendant pointed out some issues it still had with the verdict form and then, after the court reminded defendant that it was after 5:00 p.m., objected "to every single question" in the special verdict form.

The next day, after the trial court instructed the jury, the court asked the parties if they desired to take any exceptions to the given instructions. Defendant's counsel replied, "[T]he record is clear about the exceptions that I made yesterday. I have nothing to add to the record that was established yesterday."

As to whether defendant properly took exception, plaintiff correctly points out that, as to whether willfulness was a required element to impose civil penalties for the off-the-clock claims, defendant failed to take a particular exception during the court's colloquy with the parties before and after the instructions were given to the jury. That failure, however, does not defeat defendant's claim of error on appeal as a matter of preservation. That is because the Supreme Court has held "that preservation for claims of instructional error is tested by preservation principles generally, rather than by the requirements of ORCP 59 H." *Dosanjh v. Namaste Indian Restaurant, LLC*, 272 Or App 87, 90, 353 P3d 1243 (2015) (citing *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013)); *State v. Carlon*, 265 Or App 390, 393-94, 335 P3d 343 (2014) (quoting *Vanornum*, 354 Or at 631 (ORCP 59 H does not "set the standard by which the appellate courts will determine if a claim of instructional error is preserved. Instead, preservation must be determined by this court's preservation jurisprudence.")). "Those [preservation principles] ensure that trial courts have an opportunity to understand and correct their own possible errors and that the parties are not 'taken by surprise, misled, or denied opportunities to meet an argument.'" *Vanornum*, 354 Or at 632 (quoting *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011)).

Under that rubric, we conclude that defendant preserved its willfulness argument for appeal. It is patent that the trial court and plaintiff were apprised of defendant's position on the penalty statutes and, in particular, that the

instructions must include a willfulness finding for the off-the-clock claims. Defendant's argument that willfulness was required for the off-the-clock claims was sufficient to preserve it.

Likewise, we conclude that defendant did not waive its right to have the jury make a finding of willfulness under ORCP 61 B. ORCP 61 B provides, in relevant part, that when the court provides a special verdict form to the jury so that the jury can make special findings of fact, if "the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires such party demands its submission to the jury." Plaintiff argues that, because defendant's general objections to the special verdict forms did not expressly reference its previous contentions that the jury was required to decide willfulness, it waived that argument under ORCP 61 B for the same we reason we concluded that the defendant in *Taylor v. Ramsay-Gerding Construction Co.*, 235 Or App 524, 234 P3d 129 (2010), waived its right to assert that a factual matter be submitted to the jury.[13] We disagree with plaintiff.

In *Taylor*, during the jury trial, the parties actively litigated whether the jury should decide whether the plaintiff's complaint had been timely filed. 235 Or App at 530. The trial court ruled before the jury deliberated that the effect of its previous rulings was that the limitations issue had been decided as a matter of law in the defendant's favor. *Id.* at 530-31. When that ruling was made, the plaintiff did not object to the trial court's explanation of the effect of its previous ruling. *Id.* at 531. We concluded that, under ORCP 61 B, the "defendant was required to voice an objection to the court's decision to remove that issue from the jury in

---

[13] Plaintiff also relies on *Delgado*, 260 Or App 480, for that point, but *Delgado* does not assist plaintiff. In *Delgado*, the defendant argued on appeal that the trial court erred when it awarded statutory penalty wages on summary judgment because whether it was an "employer" (as defined by ORS 652.310) of the class members for the purpose of ORS 652.150 was a factual issue that should have been decided by the jury. 260 Or App at 494. However, in *Delgado*, the defendant failed to assert that argument at any point in the proceedings below and thus, we concluded that the defendant waived the right to a jury trial on that issue under ORCP 61 B because it failed to demand submission of the issue to the jury. *Id.* at 499.

order to avoid waiving the right to a jury trial of that issue." *Id.* In this case, however, unlike in *Taylor*, defendant did object to the court's decision that the issue of willfulness was not required; defendant did contend that willfulness should be considered by the jury; and defendant had previously provided the court with a proposed special verdict form that matched its objection. Also, the court indicated that it was aware of what defendant had proposed and, indicating that time was short, limited defendant's objections to "fine tun[ing]" the proposed special verdict forms, which suggests that it would have been pointless for defendant to assert at that time that the special verdict form should include a finding of willfulness. Accordingly, we disagree with plaintiff that, at the point the court entertained objections to the special verdict form, defendant was required to explicitly reprise its contention that a willfulness finding be required so as to not waive the issue under ORCP 61 B.

### 2. *Type 3 penalties*

Beginning with defendant's third assignment of error, we turn to the merits of defendant's contention that two categories of penalties required the jury to have made a finding of willfulness. In that assignment, defendant contends that, under ORS 652.150, the trial court erred in failing to submit to the jury the factual issue whether defendant willfully failed to pay regular wages earned for opening, closing, and travel time upon termination of employment (as noted, referred to by the parties as a Type 3 penalty). In relevant part, ORS 652.150(1) provides:

> "Except as provided in subsections (2) and (3) of this section,[14] if an employer *willfully* fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced. However:

> "(a) In no case shall the penalty wages or compensation continue for more than 30 days from the due date * * *."

---

[14] Subsection (2) concerns an employer's liability with respect to an employee's notice of nonpayment and subsection (3) concerns the payment of commissions.

(Emphasis added.) On appeal, defendant reprises its assertion that, under Oregon case law, a finding of willfulness is required to assess penalties under ORS 652.150; defendant insists that the imposition of penalties is not a matter of strict liability.

We agree that ORS 652.150 is not a strict liability statute: Oregon case law is clear that the assessment of penalties for unpaid wages upon termination of employment under ORS 652.150 requires willfulness. "ORS 652.150 entitles an employee to penalty wages if (1) his or her employment is terminated and the employer (2) *willfully fails to pay*, (3) within one business day, (4) wages that are (5) earned and unpaid at the time of the termination." *Wilson*, 197 Or App at 659 (emphasis added); *see also State ex rel Nilsen v. Cushing*, 253 Or 262, 265, 453 P2d 945 (1969) (penalties assessed under ORS 652.150 in "cases of willful nonpayment of wages"); *Nordling v. Johnston*, 205 Or 315, 327, 283 P2d 994 (1955) (under ORS 652.150, "the additional liability is only for a wilful wrong").

Plaintiff does not contend that willfulness is not required under ORS 652.150. Rather, plaintiff argues that, once the jury determined that defendant violated the wage statutes, defendant's failure to pay wages was implicitly or necessarily willful because "at no time between the February 2010 jury verdict and the April 2010 bench trial on civil penalties did defendant pay the jury-awarded wages." That is, once the jury made its findings, defendant's failure at that point to pay the unpaid wages automatically became willful.

Plaintiff relies on our decision in *Wilson*, 197 Or App 648, but that decision is inapposite. It does not stand for the proposition that a jury finding that terminated employees are owed damages for unpaid wages renders an employer's subsequent nonpayment of those wages "willful" for the purpose of imposing penalties under ORS 652.150. In *Wilson*, the employer's obligation to pay severance pay was governed by a collective bargaining agreement (CBA), and we held that, when an arbitrator construed the CBA as obligating employer to pay severance, the "defendant's level of awareness reasonably should have changed." 197 Or App at 666. Here, there was no contractual provision that governed

defendant's obligation to pay unpaid wages upon termination as to the off-the-clock claims, and any reasonable awareness of its obligation to do so coincided with the relevant time period for which it was obligated to pay unpaid wages.

### 3. *Type 2 penalties*

Defendant also contends that the imposition of penalties under ORS 653.055(1)—for unpaid overtime wages, a violation of ORS 653.261 (Type 2 penalties)—requires a finding of willfulness. That is, defendant argues that, because ORS 653.055(1) incorporates by reference ORS 652.150, which is not a strict liability statute, it was error for the trial court to award penalties under ORS 653.055(1) without requiring a willfulness finding. In other words, because ORS 653.055 expressly incorporates ORS 652.150, ORS 653.055 incorporates the willfulness requirement of ORS 652.150. Plaintiff counters that the reference to ORS 652.150 is "merely for the purpose of calculating the penalty owed."

Our task is to construe ORS 653.055(1) and ORS 652.150 to determine if the legislature intended a willfulness finding for imposing penalties for unpaid overtime wages. In doing so, we construe those statutes to discern the legislature's intent in enacting them and to give effect to that intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Our methodology in discerning the legislature's intent takes into account the text of the statute, the context of the statute, including the case law that construes it, the legislative history of the statute and, if necessary, any pertinent maxims of statutory construction. *Id.* Also, the legislature has instructed that our task is to "simply to ascertain and declare what is, in terms of substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." ORS 174.010.

As to the violation, ORS 653.055(1) provides:

"Any employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected:

"(a)   For the full amount of the wages, less any amount actually paid to the employee by the employer; and

"(b)  For civil penalties *provided in ORS 652.150.*"

(Emphasis added.) As quoted before, the pertinent text of ORS 652.150(1) provides that,

> "if an employer *willfully* fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced."

(Emphasis added.)

We understand the fundamental disagreement of the parties' interpretation of the statutes to be a dispute about how much of the text of ORS 652.150 is and is not operative when referenced by ORS 653.055(1). Plaintiff's argument's presupposes that, because ORS 652.150 is only for the purpose of that provision's calculation of damages, the portion of the statute's text that does not concern such calculation does not have any effect.[15] In other words, plaintiff's construction of the statute would have ORS 652.150 begin at "as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the date thereof * * *." In plaintiff's view, because ORS 653.055(1) imposes penalties for the failure to pay overtime when due regardless of whether an employee's employment has ceased, when penalties are imposed under ORS 653.055(1), the entire clause—"if an employer willfully fails to pay any wages or compensation of any employee whose employment

---

[15] Plaintiff relies on our decision, *Cornier v. Paul Tulacz, DVM PC*, 176 Or App 245, 248, 30 P3d 1210 (2001), asserting that because we concluded that ORS 652.150 and ORS 653.055 "fall into two categories: statutes dealing with failure to pay wages owed at termination and statutes dealing with failure to pay overtime[,]" it necessarily follows that any provision of ORS 652.150 that does not concern the calculation of penalties is not effective when penalties are assessed under ORS 653.055(1). In *Cornier*, we held that an employee was entitled to penalties for both her employee's failure to pay overtime at the overtime rate, ORS 653.261, and for her employer's late payment of accrued vacation pay. Although it is true that ORS 653.055(1) is available as a penalty before an employee's termination, a finding of willfulness does not preclude the imposition of the two types of penalties as we held in *Cornier*. And, although it appears that the trial court in that case did not require a finding of willfulness as to the overtime violation, we neither addressed nor decided that issue.

ceases"—is no longer pertinent. Defendant's argument, on the other hand, posits that only the phrase "whose employment ceases, as provided in ORS 652.140 and 652.145" is not given effect, leaving "if an employer willfully fails to pay any wages or compensation of any employee" and "then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the date thereof * * *."

To put it mildly, the reference in ORS 653.055 to ORS 652.150 (which in turn is meant to apply to ORS 652.140) is an example of awkward drafting. Although there is, perhaps, some logic to eliminating the entire clause preceding the reference to ORS 652.140 and ORS 652.145 (*i.e.*, "willfully fails to pay") if part of that clause ("whose employment ceases") is not applicable, plaintiff has not put forth a principle of statutory construction for why that must be so. On the other hand, defendant's construction of ORS 652.150—in which "willfully fails to pay any wages or compensation of any employee" remains operative when referenced by ORS 653.055(1)—gives effect to more of the statute than plaintiff's construction. Defendant's interpretation would be consistent with our "obligat[ion] to take a statute as we find it and give effect to all of it, if possible." *Wyers v. American Medical Response Northwest, Inc.*, 360 Or 211, 221, 377 P3d 570 (2016); *see also Murphy v. Nilsen*, 19 Or App 292, 298, 527 P2d 736 (1974) (citing ORS 174.010 and quoting *Blyth & Co., Inc. v. City of Portland*, 204 Or 153, 159, 282 P2d 363 (1955) ("Courts do not cast aside language of a law as meaningless if it is reasonably possible to give it effect. * * * Courts must so construe a statute as to give effect to every section, clause, phrase or word of the legislative act.") (Brackets and internal quotation marks omitted.)).

Defendant's approach is consistent with the statutory mandate, ORS 174.010, that particulars of statutes must be adopted so as to not "insert what has been omitted, or to omit what has been inserted." Plaintiff's construction of ORS 652.150 and ORS 653.055 does both. That is, plaintiff argues that the real meaning of the reference to ORS 652.150 is for the purpose of penalty calculation only. In enacting ORS 653.055, the legislature had the opportunity to write subsection (b) in the manner asserted by plaintiff, which would substitute "as calculated" for "provided," *i.e.*,

"For civil penalties *as calculated* in ORS 652.150." Instead, ORS 653.055(1) makes an employer liable for "civil penalties provided in ORS 652.150." Using the term "provided" rather than "as calculated" suggests a broader reading of ORS 652.150 to include the *provisions* of ORS 652.150, namely, its requirement of a willful failure to pay wages owed. *See State v. Cloutier*, 351 Or 68, 98, 261 P3d 1234 (2011) (noting "the interpretive principle that, if possible, we give a statute with multiple parts a construction that 'will give effect to all' of those parts" (quoting ORS 174.010)).

Indeed, ORS 653.055, and its reference to ORS 652.150, was adopted in 1967, several years after the Supreme Court had stated that ORS 652.150 was not a strict liability statute. *State ex rel Nilsen v. Cushing*, 233 Or 103, 108, 377 P2d 331 (1962). "Context includes the pre-existing common law and the statutory framework within which the law was enacted." *Ram Technical Services, Inc. v. Koresko*, 346 Or 215, 232, 208 P3d 950 (2009) (internal quotation marks omitted). The adoption of ORS 653.055 may be fairly understood to have been done with an understanding of what ORS 652.150 had been construed to mean.

Plaintiff asserts that defendant is attempting to insert willfulness into ORS 653.055(1) and that, if such was the legislature's intent, it "could have easily inserted 'willfully' [into ORS 653.055(1)] if it had desired, since that word is specifically used in ORS 652.150, which is older." The strength of the argument, however, disappears with a question: Why bother adding a willfulness element in ORS 653.055(1), creating redundancy, when there is already a willfulness element in ORS 652.150? Indeed, knowing that ORS 652.150 was not a strict liability statute, if the legislature had intended to limit the reference to ORS 652.150 for the purpose of only calculating damages, and, if the legislature had intended that penalties awarded under ORS 653.055(1) were a matter of strict liability, then the legislature could have drafted ORS 653.055(1) and its reference to ORS 652.150 in such a manner that would make it clear that that was the case.

Although the legislative history is scant, what little there is indicates that the legislature, in enacting ORS

653.055, intended to provide for civil penalties for employment condition violations under ORS 653.010 to 653.261 when an employer's violation of those provisions was willful. Belton Hamilton, a representative of the Bureau of Labor, testified before the House Committee on Labor and Management. As reflected in the minutes, Hamilton testified that the amendment to the bill that provided for civil penalties was "for any employer who willfully pays less than the minimum wage. The employee is paid a penalty for any time he has to wait for his pay." Minutes, House Committee on Labor and Management, HB 1340, Mar 10, 1967, 2. Similarly, George Brown, a representative of the Oregon AFL-CIO, explained that the penalty provision was for the event "if anyone attempts to evade the payment of wages[,] the wages can continue up to 30 days and the employer is still liable for them." Minutes, Senate Committee on Labor and Industries, HB 1340, Apr 26, 1967, 4. Together, those statements indicate that the labor-interest representatives advocating for the penalty provision understood and communicated to the legislative committees that the penalty provision was not to be imposed as a matter of strict liability, but required willful failure to pay wages by an employer.[16]

Finally, giving effect to the word "willfully" in the statute helps to resolve concerns that the imposition of penalties is unconstitutional. The Supreme Court has noted, in an opinion that answered a challenge to the constitutionality of ORS 652.150 on grounds that it is vague, arbitrary, and discriminatory, that "ORS 652.150 operates only where the employer has 'willfully' failed to meet the obligations outlined in ORS 652.140" and that its "purpose is to protect employees from unscrupulous or careless employers who fail to compensate their employees although they are fully aware of their obligation to do so." *Nilsen*, 233 Or at 108. The court also addressed federal due process concerns that the penalty's application "results in an arbitrary and unreasonable confiscation of property" by remarking that that proposition

---

[16] We caution against relying on this legislative history to establish what mental state is required to establish willfulness. That inquiry would be better served by relying on the legislative history of ORS 652.150 itself, or Oregon case law, *see, e.g., Wilson*, 197 Or App at 659-67; *Young v. State of Oregon*, 340 Or 401, 409, 133 P3d 915 (2006).

assumes, erroneously, that the penalized employer "is ignorant of the fact that the employer is indebted to his former employee." *Id.* at 109.

Likewise, construing ORS 653.055(1) and its reference to ORS 652.150 so as to include "willfulness" avoids the danger of constitutional concerns. "It is axiomatic that we should construe and interpret statutes 'in such a manner as to avoid any serious constitutional problems.'" *Bernstein Bros. v. Dept. of Rev.*, 294 Or 614, 621, 661 P2d 537 (1983) (quoting *Easton v. Hurita*, 290 Or 689, 694, 625 P2d 1290 (1981)). "Indeed, '[w]hen confronted with competing, reasonable constructions of a statute, and there is even a tenable argument that one of them would render the statute unconstitutional, we generally favor the other construction.'" *State v. Alvarado*, 257 Or App 612, 621, 307 P3d 540 (2013) (quoting *Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 522, 238 P3d 395 (2010)).

In sum, we conclude that the reference to ORS 652.150 in ORS 653.055(1) includes the need to establish that an employer's failure to pay wages is willful in order to impose civil penalties. The trial court erred by not allowing the jury to make that determination for both Type 2 and 3 penalties for the off-the-clock claims.

## C. *ORCP 32 N: Tolling of Penalties*

The trial court determined that the 2005 filing of the *Joarnt* action against defendant tolled, under ORCP 32 N, the statute of limitations for certain of the class members' claims, eventually resulting in the award of $862,894 in additional civil penalties. In part, ORCP 32 N provides that the "statute of limitations is tolled for all class members upon the commencement of an action asserting a class action." In its second assignment of error, defendant raises several arguments challenging that determination, namely, that the tolling was an adjudication of the *Joarnt* action and that the trial court lacked authority to do so, that the tolling was not allowed under ORCP 32 C and ORCP 32 N, and that defendant was deprived of a jury trial on those claims. In its eighth and ninth assignments of error, defendant challenges the trial court's denial—on procedural grounds—of

a prejudgment "Motion to Reduce Penalties" and an ORCP 64 motion for a new trial as well as a post-judgment ORCP 64 motion and a motion for judgment notwithstanding in the verdict. In those motions, defendant challenged the imposition of the penalties primarily on the ground that the amount of the penalties compared to the amount of actual damages violated federal due process under *Gore*, 517 US 559. Defendant also raised a challenge to the additional *Joarnt* penalties in the prejudgment motion and the post-judgment ORCP 64 motion for a new trial.

Our conclusion that the trial court erred in impos-ing penalties for the off-the-clock claims without finding that defendant willfully failed to pay the unpaid wages obvi-ates the need to address defendant's arguments concerning the additional penalties as to those particular claims. What remains, however, is defendant's challenge to the tolled pen-alties as to the final-wages claim. For the reasons we discuss below, we decline to review defendant's second assignment of error because its failure to comply with ORAP 5.45 hin-ders our review of the assignment. Moreover, we conclude that the trial court did not err in denying defendant's pre- and post-judgment motions on procedural grounds.

As to defendant's second assignment of error, under its preservation of error subheading, defendant states that the issue was "heavily litigated" and that there "was exten-sive briefing, in which [defendant] raised objections. (OJIN 500, 529, 531, 576, 592, 606, 607, 634 636)."[17] Additionally, defendant points to nine different findings, conclusion of law, or orders that implicated the tolled penalties in its excerpt of record. Defendant posits that that description of its pres-ervation history satisfied what is required under ORAP 5.45(4)(a), which provides, in relevant part:

"Each assignment of error shall demonstrate that the question or issue presented by the assignment of error timely and properly was raised and preserved in the lower court. Under the subheading 'Preservation of Error':

---

[17] Defendant also points to its preservation history in its assignments six (federal due process challenge to penalties) and seven (challenge to the supple-mental judgment). Neither identifies where and how defendant preserved the arguments it raises in its second assignment of error.

"(i) Each assignment of error, as appropriate, must specify the stage in the proceedings when the question or issue presented by the assignment of error was raised in the lower court, the method or manner of raising it, and the way in which it was resolved or passed on by the lower court.

"(ii) Each assignment of error must set out pertinent quotations of the record where the question or issue was raised and the challenged ruling was made, together with reference to the pages of the transcript or other parts of the record quoted or to the excerpt of record if the material quoted is set out in the excerpt of record. When the parts of the record relied on under this clause are lengthy, they shall be included in the excerpt of record instead of the body of the brief."

We disagree that defendant complied with ORAP 5.45(4).

"Compliance with ORAP 5.45 is not a matter of mere form; it is crucial to our ability to review trial court rulings for error and to determine whether the appellant's claims of error were preserved below." *Village at North Pointe Condo. Assn. v. Bloedel Constr.*, 278 Or App 354, 359, 374 P3d 978, *adh'd to as modified on recons*, 281 Or App 322, 383 P3d 409 (2016); *see* ORAP 5.45(4)(c) ("The court may decline to consider any assignment of error that requires the court to search the record to find the error or to determine if the error properly was raised and preserved."). Moreover, we have no obligation "to take it upon ourselves to review the record to find that matters assigned as error are preserved and may instead decline consideration of those assignments." *Holbrook v. Precision Helicopters, Inc.*, 162 Or App 538, 544, 986 P2d 646, *rev den*, 329 Or 527 (1999); *see also Strawn v. Farmers Ins. Co.*, 228 Or App 454, 475, 209 P3d 357 (2009), *aff'd in part and rev'd in part on other grounds*, 350 Or 336, 258 P3d 1199, *adh'd to on recons*, 350 Or 521, 256 P3d 100 (2011), *cert den*, ___ US ___, 132 S Ct 1142 (2012) (declining to reach claims of error because the noncompliance with ORAP 5.45 rendered the court unable to determine what rulings were being challenged and whether the bases for the challenges were preserved below).

To be sure, the rule allows a party to set out "pertinent quotations of the record" in the excerpt of record, but

that allowance is not so lenient as to permit a party to refer to multiple "OJIN" reference numbers,[18] especially without any signposts directing us to where in the record we can view the arguments raised by a party on appeal. A reference to an OJIN number is not a reference to a brief's excerpt of record and does not satisfy the requirement that, under ORAP 5.45(4)(a)(ii), *pertinent quotations* of the record be included in the assignment's preservation section or in the excerpt of record. Moreover, even if it did, the bare OJIN number references fail to satisfy the requirement that a party point us more specifically to where in a document or transcript we can find the preserved argument. ORAP 5.45(4)(a)(ii) (an assignment of error must also provide "reference to the pages of the transcript or other parts of the record quoted or to the excerpt of record if the material quoted is set out in the excerpt of record").

Further, the problem of defendant's nonspecificity is compounded because defendant's second assignment of error raises multiple arguments and grounds asserting trial court error, which would require us to sift through defendant's nine document references to discover the manner in which it preserved each argument. We have no obligation to do so. ORAP 5.45(c). Because defendant's failure to show us where and how it preserved the arguments it advances on appeal hinders our ability to properly consider the trial court's ruling, we decline to review the merits of defendant's arguments raised in its second assignment of error.

We next address defendant's eighth and ninth assignments of error, which challenge the trial court's denial—on procedural grounds—of motions made before and after the general judgment was entered. Those motions challenged the award of statutory penalties, which defendant challenges on substantive grounds in other assignments of error. As noted, defendant's motions mainly contended that the penalties compared to the amount of actual damages violated federal due process under *Gore*, but defendant also raised a challenge to the additional *Joarnt* penalties in the prejudgment motion and the post-judgment ORCP 64 motion for a

---

[18] "OJIN" is the former Oregon Judicial Information Network register. ORCP 64 C provides that ORCP 64 B is applicable to an action tried without a jury.

new trial. Although our reversal of the penalties imposed on the off-the-clock claims obviates much of what defendant challenged in those motions, we address its challenge to the denial of pre- and post-judgment motions to the extent they challenged the *Joarnt* penalties as to the final-wages claim.

We begin with the court's denial of defendant's prejudgment "Motion to Reduce Penalties to Legal Limits; Alternative Motion For New Trial (ORCP 64)." At the hearing on the motions, the trial court construed defendant's motions as one motion and denied it on procedural grounds. The court ruled that it found unavailing defendant's contention that the federal due process framework under *Gore*, which involved punitive damages, applied to statutory penalties. Among other reasons, the court determined that, by way of ORCP 64 C, to the extent that defendant sought relief under ORCP 64 B(5), defendant had failed to move for dismissal under ORCP 54 B(2) after the bench trial; and that, to the extent that defendant sought relief under ORCP 64 B(6), defendant had not set out the relevant matters to which it had properly objected or taken exception.[19]

Defendant asserts that the trial court erred in deciding its ORCP 64 motion because the alternative motion was to be considered only if the trial court were to grant its motion to reduce penalties to legal limits. That argument made on appeal, however, is more elaborate than the one offered in its motions below. It was presented below in the "alternative and in the event that it is a procedurally appropriate disposition." We take note of two things: first, defendant concedes that the circumstances of its "Motion to Reduce Penalties," challenging the award of civil penalties determined by a bench trial on grounds normally applied to

---

[19] ORCP 64 B relevantly provides:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"\* \* \* \* \*

"(5) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

"(6) Error in law occurring at the trial and objected to or excepted to by the party making the application."

jury-determined punitive damages, lacked "procedural prec-edent," and, second, defendant in its subsequent ORCP 64 motion for a new trial, again raised a challenge to the tolled penalties. *Cf. Wilmoth v. Ann Sacks Tile and Stone, Inc.*, 224 Or App 315, 330, 197 P3d 567 (2008) ("A motion for a judgment notwithstanding the verdict is not the appropriate procedure to challenge a claim tried to the court. However, when a motion is so labeled but asks the court to set aside its own judgment and reach different factual findings and conclusions of law, that motion functions as one for a new trial."). In that light, we conclude that, at least with respect to defendant's challenge to the tolled penalties, the trial court did not err in viewing defendant's motions as a motion for a new trial and then denying the ORCP 64 motion.

The trial court did not err due to another proce-dural problem. It is a problem that the trial court identi-fied and that is compounded here. A motion brought under ORCP 64 B(5)—that the evidence is insufficient "to justify the verdict or other decision, or that is against the law"—requires a prior motion for a directed verdict, or, in the case of a bench trial, requires a party to have moved to dismiss under ORCP 54 B(2).[20] *See Arena v. Gringich*, 305 Or 1, 8 n 1, 748 P2d 547 (1988) (even though ORCP 64 B(5) does not expressly require a prior objection, "a motion for directed verdict has long been a prerequisite for an appeal assigning lack of evidence, with or without a [subsequent] motion for a new trial"); *Riverside Homes, Inc. v. Murray*, 230 Or App 292, 298 n 3, 214 P3d 835 (2009) (a directed motion verdict is equivalent to a motion for involuntary dismissal under ORCP 54 B(2) when issue is tried to the court). Defendant failed to file or otherwise make an ORCP 54 B(2) motion.[21]

Similarly, defendant did not comply with the requirements of ORCP 64 B(6), which requires that, to

---

[20] ORCP 54 B(2) provides that, in an action tried to the court without a jury, at the close of the plaintiff's case-in-chief, the defendant, "without waiving the right to offer evidence in the event the motion is not granted, may move for a judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

[21] Further, on appeal, a party is precluded from assigning as error a denial of a motion for a new trial based on the insufficiency of the evidence. *Erwin v. Thomas*, 267 Or 311, 314, 516 P2d 1279 (1973).

assert that a legal error occurred at trial, a party seeking the relief of a new trial, must have objected to or taken exception to the alleged legal error. In its memorandum supporting its motion, defendant merely incorporated by reference defendant's writ of mandamus to the Supreme Court, in which it had challenged the tolled penalties and which was denied by the court. That reference was inadequate to show a prior objection. Consequently, the trial court did not err in concluding that defendant failed to properly object or take exception to the tolling of the penalties.

As to defendant's subsequent, post-judgment ORCP 64 motion for a new trial, defendant again asserted that it was entitled to a new trial on the tolled penalties. The trial court found that defendant had "waived" its right to file a second ORCP 64 motion that raised "the same or additional issues and request[ed] the same or additional relief," and denied the second motion on the same grounds as it did the first motion. The trial court's conclusion that defendant had waived its right to move a second time for a new trial was effectively the trial court characterizing the second motion as a motion for reconsideration. A trial court has broad discretion in determining whether to reconsider its earlier rulings, *State v. Guzek*, 358 Or 251, 268, 363 P3d 480 (2015) (so stating), and here, we conclude that the trial court did not abuse its discretion in denying defendant's second motion for a new trial.

D. *Attorney Fees*

In its seventh assignment of error, defendant challenges the supplemental judgment in which the trial court awarded plaintiff $4,249,665.49 in attorney fees. Because we reverse the general judgment, we necessarily reverse the supplemental judgment. ORS 20.220(3) ("When an appeal is taken from a judgment under ORS 19.205 to which an award of attorney fees or costs and disbursements relates: (a) If the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed[.]"). However, because plaintiff remains the prevailing party on his claims except for the imposition of the off-the-clock claims penalties, the issues surrounding an award of attorney fees are likely to arise on remand. We

therefore address some of the errors in the supplemental judgment with regard to the statutory authority and the finding supporting the multiplier enhancement. *See ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 257 Or App 180, 306 P3d 661, *rev den*, 354 Or 491 (2013) (on petition for reconsideration, noting that we had given "the trial court and the parties further guidance on those attorney fee issues likely to arise on remand").

The trial court determined that three statutes entitled plaintiff to the entire attorney fee award, each on separate and independent grounds. Those entitlement statutes are: (1) ORS 652.200(2) (generally, entitlement to attorney fees in an action for unpaid wages unless the "plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action"); (2) ORS 653.055(4) (for actions in which an employee is entitled to wages under ORS 653.010 to 653.261, the "court may award reasonable attorney fees to the prevailing party"); and (3) ORS 20.105 (attorney fees for the prevailing party in which the other party "willfully disobeyed a court order" or lacked an "objectively reasonable basis for asserting the claim, defense or ground for appeal"). Concluding that the award of attorney fees was deficient in several respects, we note the following points about the grounds for an award.

First, as to the entitlement of attorney fees under ORS 652.200(2), the prelitigation notice letter sent to the employer regarding plaintiff's claims was deficient for the same reason that we concluded that the prelitigation letter was deficient in *Belknap v. U. S. Bank National Association*, 235 Or App 658, 672, 234 P3d 1041 (2010), *rev den*, 349 Or 654 (2011). That is, the specific name of the plaintiff or plaintiffs was required to be included so that an employer would have an opportunity to resolve the claim before litigation. The facts of this case are materially indistinguishable from those in *Belknap*, and, accordingly, plaintiff is not entitled to attorney fees under ORS 652.200(2).

Second, as to the entitlement of attorney fees under ORS 653.055(4), because plaintiff did not prevail on all of his claims (specifically, he failed to prevail on his meal- and

rest-break claims), the judgment is required to comply with ORS 20.077, namely, the court was required to determine the prevailing party on each separate claim and then decide whether to award attorney fees on the prevailing claims and the amount to be awarded. *See Robert Camel Contracting, Inc. v. Krautscheid*, 205 Or App 498, 503, 134 P3d 1065 (2006) (in actions involving multiple claims, ORS 20.077 requires that the court "determine the prevailing party on each claim and award attorney fees accordingly").

Third, as to the entitlement of attorney fees under ORS 20.105, fees authorized under that statute must be apportioned to the particular willful disobedience of a court order or the particular legal position that was without an objectively reasonable basis: The general rule that attorney fee entitlement statutes must apportion authorized and unauthorized fees applies to ORS 20.105. *See Lovejoy Specialty Hospital v. Advocates for Life*, 121 Or App 160, 168, 855 P2d 159, *rev den*, 318 Or 97; 318 Or 98 (1993), *cert den*, 511 US 1070 (1994) (so stating).

We turn to the matter of the multiplier enhancement of the attorney fee. The trial court considered the factors set out in ORS 20.075 and used the "lodestar" method of calculation (a reasonable hourly rate and a reasonable number of hours devoted to work on the case, *Strawn v. Farmers Ins. Co.*, 353 Or 210, 217, 297 P3d 439 (2013)), and determined a lodestar attorney fee amount of $2,124,833, finding that the appropriate hourly rate for plaintiff's partner-level attorneys was $495. The court determined that an enhanced *double* multiplier was justified, resulting in an attorney fee award of $4,249,665, because of the "novelty and difficulty, the risks involved (including this being a zero offer case), the excellent results obtained for the plaintiff class, and the experience, efficiency, ability and skill of Plaintiff's counsel[,]" and to "deter others from engaging in objectively unreasonable conduct, which would include willfully violating multiple court orders, and continuing to assert meritless legal arguments and materially inaccurate false statements, as Defendant and its counsel have done in this case." When the trial court reexamines the fee award, we provide the following guidance about an enhanced multiplier of that award.

First, when awarding fees, a court's findings must be adequate to allow meaningful appellate review. *Grisby v. Progressive Preferred Ins. Co.*, 233 Or App 210, 222, 225 P3d 101 (2010) (as to reduction of attorney fees that are otherwise reasonable, "some explanation by trial courts in that regard greatly assists this court in exercising its review function consistently with the dictates of *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 187-88, 957 P2d 1200 (1998)"). That is, a court must set out in its findings "the relevant facts and legal criteria on which the court relies in awarding attorney fees." *McCarthy*, 327 Or at 190. Here, the court's findings justifying the multiplier fails to set out the facts or legal criteria on which the court relied and, thus, lack the requisite degree of specificity to allow review.

Second, in *Grisby*, 233 Or App at 222, we stated that "a court's discretionary authority to reduce requested attorney fees that are otherwise reasonable * * * is subject to principled constraints. In particular, there must be a rational nexus between the factor invoked, and its underlying circumstances, and the amount of the reduction." *See, e.g.*, ORS 20.075. Those constraints likewise apply to the court's authority to enhance a requested attorney fee award. We also note that, to the extent that any multiplier or enhancement is based on counsel's improper conduct, the trial court must also consider the enhancement in light of whether fees have been already awarded under ORS 20.105.

Finally, we acknowledge the Supreme Court's discussion of a lodestar fee and enhancement multiplier in *Strawn*, 353 Or at 222-31. The court rejected applying a multiplier in a circumstance in which the plaintiff asserted that the lodestar method would compensate his lawyers *less* than what he had agreed to pay them on a contingency fee basis. *Id.* at 226. Here, the multiplier and the lodestar fee calculation combined for an award that greatly exceeded what would have been the contingency percentage of the award and was roughly double the amount of damages and civil penalties awarded to plaintiff.

## III. CONCLUSION

In sum, we affirm the trial court's certification of the classes but reverse and remand the imposition of statutory

penalties as to the off-the-clock claims. The supplemental judgment for attorney fees is reversed and remanded.

Reconsideration of order of Appellate Commissioner denying motion to dismiss allowed; previous order denying motion to dismiss adhered to. On appeal, (1) general judgment reversed and remanded as to off-the-clock claim penalties; otherwise affirmed; (2) supplemental judgment reversed and remanded. On cross-appeal, affirmed.